CASE 27—ACTION BY MELTON WHEELER AGAINST HENDERSON TOBACCO EXTRACTS WORKS FOR PERSONAL INJURIES.—SEPT. 29.

# Henderson Tobacco Extracts Works v. Wheeler.

### APPEAL FROM HENDERSON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

MASTER AND SERVANT—INJURY TO SERVANT—DANGEROUS SERVICE—NEGLIGENCE OF MASTER—DUTY TO PROVIDE SAFE PREMISES—PRIMARY LIABILITY OF MASTER—CONTRIBUTORY NEGLIGENCE OF SERVANT—RELATIVE DUTIES—QUESTION FOR JURY.

Held: 1. An employe at a factory was injured while carrying a bucket of heavy fluid up some movable steps to pour into a revolving cylinder, when, by something giving way, he was thrown into the cylinder and three ribs broken and his arm so injured

that it had to be amputated. He knew the work was dangerous, and had worked there before, but not within the past year. HELD, that whilst it is the duty of the servant to exercise that degree of care which is commensurate with the character of his employment in order to protect himself from injury, and if he fails to exercise this care he can not recover for an injury to which his own negligence has contributed, it is the primary duty of the master both to provide and keep in a reasonably safe condition the place of work, and this duty is more important than the duty of the servant to use reasonable care to protect himself.

2. Where the servant was directed by his master's foreman to work in a dangerous place, where neither the step nor the foundation afforded a safe place in which to perform such dangerous service, the servant was not required to make a minute examination of the approaches thereto, but had a right to believe that they were safe; and the master can not escape his primary liability to keep the place safe by charging that it was the duty of the servant to have carefully examined the approaches and the steps before obeying the command of the foreman.

3. The care which parties are required to use in the discharge of their respective duties varies so much with the situation of the parties and the circumstances of each particular case that it is the policy of the law to leave questions of this kind to the jury.

R. H. CUNNINGHAM, COUNSEL FOR APPELLANT.

### QUESTIONS AND AUTHORITIES.

1. The master is not an insurer of the servant against accidents. Shearman & Redfield, Neg., 203; 24 Ky. Law Rep., 1318.

2. The master's duty is to provide reasonably safe machinery with reasonably safe approach to reasonably safe place to work. Shearman & Redfield, Neg., 194; 24 Ky. Law Rep., 1318.

3. The servant's duty is to use reasonable care in going to and doing his work; to use his eyes and ears, and his judgment. Wood's Master and Servant, 326; 24 Ky. Law Rep., 776.

4. The duty of inspection is cast upon the servant by his knowledge of any fact that would put one of ordinary prudence, and of his circumstances and capacity upon inquiry. Shearman & Redfield, Neg., 217; 84 Ky., 330.

5. It is the duty of the servant to give notice of defects and to complain; and his failure to do so is contributory neglect. Shear. & Red., Neg., 221; 84 Ky., 330.

6. The master is not liable for any defects of which he had no notice and could not discover by ordinary care. Shear. & Red., Neg., 195; 24 Ky. Law Rep., 1318; 84 Ky., 330.

7. The master is not liable for consequences of a condition which were unexpected and could not be contemplated. Watson's Pers. Inj., pp. 28, 180, 189; 94 U. S., 469; 105 U. S., 249; 56 S. W. Rep., 21.

8. Past experience and condition may be shown by which to judge of what might be expected. Watson's Pers. Inj., pp. 199 et seq., 208; 168 U. S., 135.

9. Negligence is a question of proximate cause and contemplation of consequences. Watson's Pers. Inj., p. 204; 56 S. W., 21.

10. Non-suit is proper when the evidence gives only ground for conjecture. Watson's Pers. Inj., 219, 367; 47 S. W., 440; 48 S. W., 434; Shear. & Red., Neg., 223.

11. The servant assumes the ordinary risk of his employment. Wood's Master and Servant, 326, 385; 23 Ky. Law Rep., 2154; 50 Am. St. Rep., 202; 53 Am. St. Rep., 129; 84 Ky., 330; 69 Am. St. Rep., 538.

12. It is contributory neglect for the servant to disregard the risk of his employment, and it may be pleaded generally. 101 Ky., 106.

13. The servant's failure to give notice of defects is contributory neglect. Shear. & Red., Neg., 221.

14. No negligence is inferred from accident, and to show liability of the master, there must be affirmative proof of his fault. Shear. & Red., Neg., 223; Wood's Master and Servant, 382; 84 Ky., 330; 24 Ky. Law Rep., 1318.

15. Evidence that machinery worked properly before and after an accident is competent to disprove neglect of the master. Shear. & Red., Neg., 223.

16. A peremptory instruction for the defendant should have been given. 54 L. R. A., 258; 23 Ky. Law Rep., 2154; 24 Ky. Law Rep., 253; 24 Ky. Law Rep., 796; 24 Ky. Law Rep., 1318.

17. Evidence of changes made after an accident was improper. Watson's Pers. Inj., 778, 762, 764; 13 Ky. Law Rep., 626; Shear. & Red., Neg., 60c.

A. O. STANLEY AND MONTGOMERY MERRITT, ATTORNEYS FOR APPELLEE.

1. It is admitted that the law requires the employer to furnish employe a reasonably safe place in which to work and reasonably safe tools and appliances to work with. By the expenditure of five dollars the place where appellee was at work could have been made entirely safe.

2. But it is contended that appellee knew of this danger and assumed the risk. He had been at work only a day when the accident occurred and had not been about it for a year before.

Henderson Tobacco Extracts Works v. Wheeler.

He was no carpenter. He was not required to inspect the steps or the approach to the machine or to repair them. The superintendent was superior in knowledge and authority to appellee, and it was his duty to see that the steps were secure and a guard rail put up and not leave the matter for a poor negro to determine the existence of the danger or assumption of the risk.

### AUTHORITIES CITED.

Wake v. Price, 58 S. W., 519; C. N. O. & T. P. R. Co. v. Simpson's Admr., 30 S. W., 13; Brooks v. L. & N. R. Co., 71 S. W., 507; Crabtree Coal & Mining Co. v. Sample's Admr., 24 R., 1703; 20 Am. & Eng. Ency. of Law, 71; L. & N. R. Co. v. Howard's Admr., 82 Ky., 212; Shelby v. C. N. O. & T. P. R. Co., 85 Ky., 224; 98 Ky., 367 and 587.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

The appellee, Melton Wheeler, instituted this action against the appellant, the Henderson Tobacco Extracts Works, to recover damages for a personal injury sustained by him whilst in their employ, which he alleges was due to negligence on their part. The record discloses that appellant is a corporation which has been engaged in the manufacture of an extract from tobacco, which is principally used as a sheep wash. The machine used for this purpose consisted of a stationary iron cylinder, which was set upon a solid brick foundation two feet six inches in height. Within this cylinder, which extended about three feet above the foundation, there was a brass cylinder, which was revolved within the heavy stationary iron cylinder by steam power, by means of a belt connecting it with an engine. Inside of the brass cylinder, which was about two feet in diameter and fourteen inches deep, a bag was sewed at the top to a wire hoop, into which the liquid extract was poured from a water bucket, and the motion of the cylinder, revolving twelve hundred times a minute, threw the extract against the sides of the bag, through which it strained and ran off from the bottom through an iron pipe. The foundation

under the iron cylinder projected six and one-half inches. The liquid extract was carried to the cylinder in buckets by a man who went up a stepladder of three steps eight inches wide, which rested on a brick floor at the bottom, and the top step of which was even with the foundation of the iron cylinder. These steps were entirely unsecured at the bottom. There is some testimony conducing to show that a plank was nailed to the top step, which projected slightly over the top of the foundation. The steps were movable, and were frequently carried from one place to another around the foundation. The man who poured the extract into the revolving cylinder stood with one foot on the top step and the other on the narrow projecting foundation, and leaned over so as to pour the fluid into the center opening slowly. The liquid was about twice as heavy as water, and quite slimy, and the testimony shows was frequently spilled on the steps and the projecting foundation. The appellee, a negro man, had been employed in the factory for eight or nine years as a laborer under the supervision of a foreman, and on the 23d of February, 1902, was instructed by the foreman to pour the extract into the cylinder, which was called a "centrifugal," and operate the machine. He testified that after he had poured in four or five buckets of the extract, and while he was standing looking into the cylinder, with one foot on the projecting foundation and the other on the movable steps, something gave way beneath him, and he was thrown against the cylinder, and his arm caught, and he was instantly jerked into the revolving cylinder, and after being carried around several times was thrown out upon the floor with a broken arm, which was afterwards amputated, two broken ribs, and severe injuries about the head, face, and body, entirely unconscious, and from which injuries he was for a long

time confined under the care of a physician. The trial re-sulted in a verdict for appellee for $1,000, under instruc-tions which are not seriously complained of, and which were in fact as favorable to the defendant as the law authorized. Substantially the only ground upon which a reversal is asked is the failure of the trial court to direct a verdict in favor of the defendant. This contention is based upon the claim that the appellee knew the danger of the service which he was directed to perform and assumed the risk incident thereto.

Whilst it is the duty of a servant to exercise that degree of care which is commensurate with the character of his oc-cupation, in order to protect himself from injury, and if he fails to exercise this care can not recover of the master for an injury to which his own negligence has contributed, it is the primary duty of the master both to provide and keep in a reasonably safe condition the place of work, and this duty is more important than the duty of the servant to use reasonable care to protect himself.    See Ashland Coal & Iron Co. v. Wallace, 101 Ky., 626, 19 R., 849, 42 S. W., 744; 43 S. W., 207; Crabtree Coal & Mining Co. v. Sample's Admr., 24 R., 1703, 72 S. W., 24. We think it is conclusively shown by the testimony in this case that this primary duty has not been complied with by the defendant. Mr. Routsch, the assistant man-ager of the company, was introduced as a witness, and upon cross-examination testified as follows on this point: "Q. Do you know whether anything was fastened to the top of those steps?    A. I do not.    Q. That sheep wash, when dropped out of the bucket, is slippery, is it not?    A. Yes, sir.    Q. Was there any place to set the bucket on except the projecting foundation, and don't that leave a slippery place?    A. Yes, sir.    Q. Ought there not to be some place to set the bucket besides where the foot would get in it?

A. He might have gone down the steps with it and set it down. Q. They usually set the bucket here, did they not? A. Yes, sir. Q. Would it not have been safer to have a shelf to set the bucket on? A. Yes; I think it would. Q. Would it have taken much time or expense to put a guardrail there? A. No. Q. Would it not have been much safer for the man leaning over the centrifugal? A. Yes, sir. Q. Are you not much less liable to slip with a guardrail there? A. Yes. Q. Do you consider these steps safe? A. They might be better. Q. You say they might be better? A. I think so. Q. You say you have known Melton Wheeler for nine years. What character of workman is he? A. He is careful, trusty and faithful. Q. He had no authority in the premises? A. No, he did what he was told; he had no discretion."

The testimony shows that whilst appellee had on several occasions performed the services in which he was engaged, during the course of his employment, that it was not his regular service, and that he had not been so engaged, prior to the day on which the accident occurred, for more than a year. It is not claimed that appellee was directed to make any change in the steps or the approaches to the centrifugal in any way, and that he had no authority to do so without direction is testified to by appellant's manager. When appellee was directed by appellant's foreman to carry the sheep wash to the centrifugal and operate it, he was not called upon to make any minute examination of the approaches thereto, but had the right to believe that they were in a solid and substantial condition. The service was dangerous. The slightest loss of balance on his part was liable to occasion the accident for which he sues. Neither the steps nor the foundation afforded a safe place on which to perform such dangerous service. A small ex-

penditure of time and money would have rendered the place comparatively safe. Appellant can not be permitted to escape liability for such primary negligence by the charge that it was appellee's duty, before he obeyed the commands given him, to have carefully examined the approaches and the steps. It was appellee's duty to obey the directions of the foreman, and he had a right to believe that the steps were safe. The care which parties are required to use in the discharge of their respective duties varies so much with the situation of the parties and the circumstances of each particular case that it is the policy of the law to leave questions of this kind to the jury, and we are unable to discover any reason why this rule of law should not be applied in this case.

Judgment affirmed.

Judge Barker dissents.

Petition for re-hearing by appellant overruled.