# Jones et al. v. Sharp's Adm'r.

April 23, 1940.

Wm. B. Ardery, Judge.

Bradley & Bradley and H. W. Alexander for appellants.
McKnight & Shuff for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

On January 14, 1938, at about noon, a collision occurred on the Georgetown-Owenton highway in Scott county, Ky., between the car of decedent, J. H. Sharp, driven by Robert Parker and in which he, William Vance and Ernest Shelton were passengers, and the loaded truck of appellants, then in charge of and being operated by their agent, Lonnie Stewart.

In this collision Mr. Sharp, a man about seventy years of age, sustained such serious injuries that his death resulted a few days after the collision.

The other three occupants of the car also sustained injuries, Mr. Vance's being so severe in their nature as to cause him to suffer much pain and to incur somewhat heavy expenses for medical treatment and hospitalization.

In February, 1938, shortly following Mr. Sharp's death, the administrator of his estate brought this action against appellants in the Scott circuit court, seeking recovery of damages, suffered by his estate through

his death, in the sum of $15,000 and pecuniary damages in the sum of $178, representing the amount expended for doctors and hospitalization. Each of the other three injured occupants of the car involved in this collision brought a separate action against appellants, seeking recovery of damages, for injuries sustained, upon the same ground pleaded in the administrator's suit, that the collision in which they sustained their injuries was caused by the negligence of defendants' agent and co-defendant, Lonnie Stewart, in driving the truck on the wrong side of the highway.

Answers were filed to the petitions, denying their allegations and also pleading contributory negligence on the part of Harper, the driver of Mr. Sharp's car, as having been both the contributory and sole cause of the collision between it and the truck.

These separate actions brought by Sharp's administrator and William Vance were, because of their asserting and relying on the same cause of action (growing out of this one collision), by agreement tried together but not consolidated.

In these actions, upon the same evidence and when submitted under the same instructions (except as to the measure of damages), the administrator and Mr. Vance each recovered damages in the respective sums of $3,129 and $310.50.

Appellants prosecute this appeal, granted by the lower court, from the judgment rendered against them in the action of Sharp's administrator and have also here moved for and been granted an appeal from the judgment rendered in the separate Vance action.

As the two actions, though heard together, were treated in the lower court as separate actions, only the appeal from the judgment rendered in the administrator's action will be considered and disposed of in this opinion.

Appellants seek a reversal of the judgment recovered against them by Sharp's administrator on but two of the numerous grounds set out in their motion and grounds for a new trial, which are: (1) that the verdict is against the weight of the evidence and (2) that the court erred in failing to give to the jury instruction "X" offered by appellants.

In view of the conclusion we have reached, that the trial court's judgment will have to be reversed for error in the instructions, we will, in considering the first objection, make but a brief statement of the evidence heard upon the trial, which we deem called for by the nature of this first assignment of error, that the verdict is against the weight of the evidence.

The pivotal question raised by the pleadings and evidence, and upon which the cause of action for damages must be maintained or fail, is that as to which of the parties was negligent in operating the car or truck when it was driven into collision with the other; or, that is to say, which one of these motor vehicles was being driven on its left or wrong side of the highway, bringing about the collision.

The testimony introduced to support plaintiff's contention that the collision, out of which these suits have arisen, was caused by the truck driver's negligence in driving it on the left side of the road into head-on collision with intestate's car, as given by two of the parties involved in the collision and two other eyewitnesses, who state that they had a clear view of it from the window of their home, located on the hillside about seventy feet from and directly opposite the point of collision, is that Mr. Sharp's car, as it approached the point in the curve of the highway where the collision took place, was being driven on that portion of the highway next its right shoulder and that at the same time appellants' truck, coming from the opposite direction, was being driven along the middle of the highway or over on its left side. Also, some of the occupants of the car, including the driver, testify that it was not snowing at the time of the collision; that he had thoroughly wiped and cleared the snow from the car's windshield, which had accumulated on it earlier in the day; that he had a clear view of the road and traffic ahead; and that he, in driving the car, kept it well over on his right side of the road.

Against this, Lonnie Stewart, the driver of appellants' truck, who was alleged in the pleadings and charged by plaintiff's witnesses to have caused the collision by driving his truck on his left side of the road, states that he was driving the truck on his right side of the road; that it was snowing, but that he kept his windshield clear of the snow; that when only a few feet from

plaintiff's car, he saw it and that it was being driven on the truck's side of the road; that at once, trying to avert the threatened collision, he sharply turned the truck to the right. Further he states that the driver of Mr. Sharp's car had but an obstructed view of the road ahead, as the windshield of the car was badly covered with snow.

The truck driver's testimony as to this is corroborated by the testimony of Earl Stone and Joe Green, who were at the time riding in the cab of the truck with him and were eye-witnesses of the collision and the position of the car and truck at the time of their colliding.

There was further evidence that the impact of the colliding car and truck caused Green, who occupied the right side of the cab seat, to be thrown against and shatter the glass in the truck's door and that same fell and was found on its right side of the highway and also that the shattered glass from the door of the car was found on the truck's side of the highway.

Further, it is insisted in support of defendants' theory that it was the negligence of the car's driver that caused the collision and the resulting injuries, that the testimony of plaintiff's witnesses (that the car was located far over on its side of the road at the time of the collision) is not to be accepted as creditable, as it, a light car, had it been in such position, would have been forced entirely off the road, rather than been left in the position it was found immediately following the collision (on the edge of its right side of the road).

However, the evidence introduced by the parties on this factual issue, as to whether the truck or the car was being driven on the wrong side of the highway and caused the collision, being both substantially competent and probative yet directly conflicting, the court rightly refused to give the directed verdict moved for by defendants, since the determination of such fact from this conflicting evidence clearly rested not with the court, but came within the exclusive province of the jury.

Such being the character of this conflicting evidence, it is our view that same was ample and sufficient to sustain the jury's verdict, from which it follows that the first ground urged by appellants can not be sustained as meritorious.

However, the second ground urged for reversal presents a much more difficult question.

Appellants, in support of their contention that the court should have given instruction "X" offered by them, argue that the court gave to the jury seven instructions, which covered the applicable law in the instant and the Vance case; that the first of these instructions given (which were offered by the defendants) defined the duties of the driver of decedent's car, stating in effect that it was the duty of its driver to have it under reasonable control, to operate it at a reasonable rate of speed when meeting approaching cars, to travel upon the right-hand side of the road, giving to other cars half of the road as nearly as possible, to keep a lookout ahead for other vehicles on said highway, and *to exercise ordinary care to avoid collision with them;* that this was the only admonition in the entire set of instructions on the duties of the driver of decedent's car; that instruction 1, as given by the court, while containing a correct statement of the law so far as it went, was incomplete without the giving of their proffered instruction "X," serving to define the term "ordinary care," used in instruction 1 and further presenting the theory of their defense.

Instruction "X" offered by appellants reads as follows:

"The court instructs the jury that it was the duty of the plaintiffs through their driver, at the time and place referred to in the evidence, to have his car under reasonable control and to operate it at a reasonable rate of speed and in meeting an approaching car, to travel upon the right hand side of the road as nearly as possible and to keep a lookout ahead for other vehicles on said highway and to exercise ordinary care to avoid collision with them, *and if the jury believe from the evidence that the day was snowy and that such snow was sticking to the windshield of the car and that by reason thereof the visibility was poor, then it was the duty of the plaintiff to use other means to prevent injury to travellers on said highway as in the exercise of ordinary judgment might be considered necessary by ordinarily prudent persons under the circumstances,* and if the jury believe from the evidence that the

plaintiff failed in the performance of any one or more of said duties, and that as a direct and proximate result of such failure, he collided with defendant's truck, then the law is for the defendants and the jury will so find.'' (Italics ours.)

It is to be observed that this instruction serves not only to define the term ''ordinary care'' used in the instruction, as being such degree of care as ''might be considered necessary by ordinarily prudent persons under the circumstances,'' but to point out and lay special stress and emphasis on that part of the defendants' evidence given in regard to the day, that it was snowy and that the snow was sticking to the windshield of the decedent's car.

The offered instruction we regard as defective and to be condemned in thus pointing out and emphasizing a particular part of the evidence, as it has long been the rule that this should not be done in an instruction. Here, undue prominence was given to the testimony of the defendants' witnesses that at the time of the collision, and for some time before it, it had been snowing and that the windshield of decedent's car had thereby become so covered with snow as to obstruct its driver's view of the road ahead, and the instruction made it the duty of the driver of the car, because of such conditions, not only to exercise ''ordinary care,'' but to ''use other means to prevent injury to travellers on said highway as in the exercise of ordinary judgment might be considered necessary by ordinarily prudent persons under the circumstances.''

As to this, it may be said there are not degrees of ordinary care, by reason of change in the circumstances calling for the exercise of ordinary care, even though the degree of care required for the exercise of ordinary care may change to the extent of being made commensurate with the exercise of ordinary care required under such changing or more dangerous conditions.

For such reason, this court has long adopted a plain and satisfactory definition of ''ordinary care,'' which is that it means ''such care as an ordinarily prudent person will usually exercise under circumstances like or similar to those presented in this case.'' Owensboro City R. Co. v. Tucker, 148 Ky. 844, 147 S. W. 916. Also, the term ''ordinary care'' is defined as being such care

as one of ordinary prudence usually exercises under given circumstances.

What constitutes the exercise of reasonable or "ordinary care" depends on the facts and circumstances of each particular case, as they are developed by the evidence. Sharp v. Layne, Ky., 117 S. W. 292.

The care which parties are required to use in the discharge of their respective duties varies so much with the situation of the parties and the circumstances of each particular case that it is the policy of the law to leave questions of this kind to the jury. Henderson Tobacco Extract Works v. Wheeler, 116 Ky. 322, 76 S. W. 34.

Interpreting the language of the offered instruction "X," though defective and improper in the particular criticised, supra, as a written request upon the court to give an instruction defining the term "ordinary care," we conceive the court erred in its refusal to give a proper instruction defining the term.

While the rule is that the court, in a civil case, is not required by its instructions to give the whole law of the case, but only that the instructions given upon its own motion should correctly state the law, the duty of the court is yet otherwise where an instruction is requested properly presenting the parties' theory of the case or one properly defining and explaining the technical terms used in the instructions. It then becomes the court's duty to direct the drawing of a proper instruction or to itself give one.

Holding such view of the purpose and intent of the proffered instruction "X," as one asking for a proper definition of the term "ordinary care," we are led to conclude that the court erred to the prejudice of the defendants' rights in refusing to give an instruction properly defining it.

It being our conclusion that the appellants were entitled to have such instruction given and that, by reason of the failure of the court to give the same when it was requested to do so, as we conceive it was by the defective instruction "X," they were thereby injured in their substantial rights, the judgment is reversed and the cause remanded, with the direction for further proceedings consistent with this opinion.