Brandon LUMPKINS, Minor, by Parent and Next Friend, Latonia LUMPKINS; Kenneth R. Anthony; and Jason Starks, Appellants/Cross–Appellees,

v.

CITY OF LOUISVILLE, Appellee/Cross–Appellant.

No. 2003–SC–0267–DG, 2003–SC–851–DG.

Supreme Court of Kentucky.

March 17, 2005.

Glenn Alan Cohen, Cynthia Lynn Effinger, Paul Joseph Hershberg, Seiller & Handmaker, LLP, Louisville, Counsel for Appellants/Cross–Appellees.

Paul Guagliardo, Carrie Pearson Hall, Lisa A. Schweickart, Assistant County Attorneys, William C. Stone, Director of Law, Louisville, Counsel for Appellee/Cross–Appellant.

Opinion of the Court by Justice
WINTERSHEIMER.

This appeal and cross-appeal are from an opinion of the Court of Appeals reversing a judgment based on a jury verdict in favor of the plaintiffs in an action alleging racial discrimination resulting from a hostile work environment. The Court of Appeals reversed on the basis that the instructions used by the trial judge failed to include language that an isolated incident, unless extremely serious, is insufficient to establish a hostile work environment. The jury awarded each of the appellants $167,000 for embarrassment and humiliation.

The questions presented are whether the jury instructions follow the "bare bones" rule favored by this Court; whether the City properly preserved its objection to the instructions; whether the supplemental instruction requires the jury to find multiple incidents of discriminatory conduct in order to find a hostile work environment; whether the jury verdict is supported by the evidence; whether the trial judge abused her discretion by failing to give the jury interrogatories; whether the plaintiffs established that they suffered a tangible job detriment; and whether the City is entitled to a new trial on damages because of an improper verdict.

The appellants are African–Americans who worked as lifeguards for the public pools operated by the City of Louisville in the summer of 1997, during which time they claim that they were subjected to racial discrimination as a result of a hostile work environment. They assert that they were assigned to pools in predominantly African–American neighborhoods because they would "fit in better." They also al-

lege that their direct supervisor, a Caucasian, singled them out for unpleasant chores, such as cleaning feces off the pool deck; that he excluded them from a work-related social function; and that he repeatedly referred to each of them as "boy."

On August 11, 1997, the direct supervisor accused the appellants of having vandalized his bicycle. Although there is some difference in their testimony, all of the appellants testified that the direct supervisor yelled at them and referred to them as "nigger." The direct supervisor walked out onto the pool deck and screamed, "These niggers did this to my bike, and they need to get out of my pool." This outburst was in front of a pool full of swimmers, including parents with their young children. Lacking the authority, the direct supervisor then fired the appellants, telling them to go home and that they were not needed. His supervisor called the appellants at home and told them that they were not fired and they returned to work. She also informed the direct supervisor that evening that he was fired from his position.

The appellants sued the City for creating a hostile work environment and the City denied all the allegations except for the actions by the direct supervisor on August 11. At trial, the City offered a 40-page set of jury instructions that included definitions of "severe" and "pervasive" and interrogatories asking the jury to determine if certain events occurred. The trial judge declined the proffered instructions and interrogatories and instructed the jury to find for the appellants if they were subjected to racial harassment that was severe or pervasive enough to create a hostile work environment. The trial judge also listed several factors for the jury to consider, including among others, the frequency and severity of the conduct and whether the conduct was physically threatening or humiliating.

A panel of the Court of Appeals rendered a 17–page opinion which reversed and remanded for retrial as a result of a perceived error that the instructions used by the trial judge improperly failed to include an instruction that an isolated incident, unless extremely serious, is insufficient to establish a hostile work environment pursuant to *Ammerman v. Board of Educ. of Nicholas County,* 30 S.W.3d 793 (Ky.2000). The Court of Appeals also held that the trial judge did not abuse her discretion in refusing to use the proffered instructions by the City because the claims of the appellants are evaluated under a "totality of the circumstances" and the interrogatories would have focused too much on individual incidents. This Court accepted discretionary review on both the motion and cross-motion.

## I. Instructions

The City properly preserved its objection to the instructions given by the trial judge. The tendered instructions presented its position to the court. The City also objected to the instructions given on grounds that the jury would be allowed to find that a single incident on August 11, 1997, created a hostile work environment.

The relevant instruction read as follows:

### INSTRUCTION NO. 1

You will find for the Plaintiffs, Brandon Lumpkins, Jason Starks and Kenneth Ryan Anthony, under this Instruction, if you are satisfied from the evidence that in the course of the Plaintiffs' employment with the Defendant City of Louisville, the Plaintiffs were subjected to racial harassment by the Defendant City of Louisville, by and through its agents, severe or pervasive enough to create a work envi-

ronment that a reasonable person would find hostile or abusive, and that the Plaintiffs subjectively regarded as hostile or abusive.

In determining whether the work environment was hostile or abusive, you may consider any of the following factors:

a. the frequency of the conduct or behavior;

b. the severity of the conduct or behavior;

c. whether the conduct or behavior was physically threatening or humiliating; OR

d. whether the conduct or behavior unreasonably interfered with the Plaintiffs' work performance.

. . .

▆▆▆ The instructions given by the trial judge followed the "bare bones" rule. They clearly convey the standard enunciated in *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), that the hostile work environment discrimination must be severe or pervasive and more than episodic. The Kentucky practice of "bare bones" instructions applies to all litigation including civil rights cases. The concept permits the instructions to be "fleshed out" in closing argument. *See Rogers v. Kasdan,* 612 S.W.2d 133 (Ky.1981). Whether a work environment is hostile is determined on the totality of the circumstances and juries should not be encouraged to disaggregate individual circumstances. *Cf. Williams v. General Motors Corp.,* 187 F.3d 553 (6th Cir. 1999); *see also Bowman v. Shawnee State University,* 220 F.3d 456 (6th Cir.2000). In this matter, the trial judge correctly determined that the proper forum for these concerns was closing argument rather than jury instructions.

The language required by the Court of Appeals, that an isolated incident, unless extremely serious, is insufficient to create a hostile work environment, is redundant when incorporated in these instructions. Such repetition is prejudicial because it causes undue focus on specific facts or issues. *See Geyer v. Mankin,* 984 S.W.2d 104 (Ky.App.1998); *see also Commonwealth v. Callahan,* 675 S.W.2d 391 (Ky. 1984); *Jones v. Sharp's Adm'r,* 282 Ky. 638, 139 S.W.2d 731 (1940). Although it is correct, as observed in *Ammerman, supra,* that isolated incidents must be extremely serious and be more than episodic, such language in the instructions is unnecessary in this situation. *Cf. Cox v. Cooper,* 510 S.W.2d 530 (Ky.1974).

The words "severe" and "pervasive" are not beyond the understanding of any juror. They are not terms of art, nor are they arcane. It has been held that it is reversible error to define terms which are readily understood by jurors. *Cf. McKinney v. Heisel,* 947 S.W.2d 32 (Ky.1997). Additional and unnecessary definitions would permit prejudicial error.

## II. Supplemental Instruction

The appellants contend that the supplemental instruction mandated by the Court of Appeals does require the jury to find multiple incidents of discriminatory conduct in order to find a hostile work environment. They maintain that the objection by the Court of Appeals is not remedied by its proposed solution. The appellants assert that the City did not preserve its objection because it failed to tender an instruction that would have advised the jury that it could only find a hostile work environment if it concluded that multiple incidents of discriminatory conduct had taken place.

We have already determined that the City properly preserved its objection to

the instructions. We have also concluded that the instructions given by the trial judge were proper. The analysis by the Court of Appeals was in error. It is not necessary for us to address this issue further.

### III. Evidence

■ The instructions given by the trial judge completely state the law and the appellants presented sufficient evidence from which a jury could determine a hostile work environment existed and thus this case should be reviewed for clear error. *Cf. Meyers v. Chapman Printing Co.,* 840 S.W.2d 814 (Ky.1992). The other evidence regarding several incidents of discrimination other than the August 11th confrontation was sufficient to support the finding of the jury.

Indeed, there were multiple incidents of discrimination which supported the findings of the jury as to a hostile work environment. There was supportive evidence of the racial epithets used by the direct supervisor. It has been noted in other jurisdictions that when a grown white man refers to a grown black man as "boy," there is a racially discriminatory connotation. *Cf. Jackson v. Quanex Corp.,* 191 F.3d 647 (6th Cir.1999); *Williamson v. Shalala,* 992 F.Supp. 454 (D.D.C.1998). There was sufficient evidence to support the verdict.

### IV. Cross Appeal—Separate Interrogatories

■ As the Court of Appeals correctly held, the request by the City for separate interrogatories was properly rejected by the trial judge. It was not an abuse of discretion for the trial judge to refuse to use the proffered instructions because the claims involved are to be considered under a totality of circumstances, and the interrogatories would have placed undue emphasis on individual incidents. *Bowman, supra.*

### V. Tangible Job Detriment

■ The City complains that the appellants did not suffer a tangible job detriment when their direct supervisor fired them because he did not have the authority to do so. The Court of Appeals correctly found that the failure of the City to distribute a harassment policy and complaint procedure to the appellants foreclosed the right of the City to assert the affirmative defense. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Consequently, the argument that the appellants did not suffer a tangible job detriment is moot.

### VI. Motion for a New Trial

■ The City claims that the trial judge erred in denying its motion for a new trial for the following three reasons: 1) The jury was improperly motivated by passion and prejudice when it rendered its verdict because of the repeated use of the word "nigger" by plaintiff's counsel; 2) The jury's award was punitive, not compensatory because the plaintiff's attorney asked the jury to send the City a message that its behavior was not acceptable and to compensate the appellants for what happened, making reference to the $21 million budget of the Parks Department; 3) The jury's verdict grossly exceeds the evidence of damages introduced at trial.

It should be noted that the City failed to make a contemporaneous objection to the allegations now raised on appeal. In any event, none of these arguments have merit. The use of the racial epithet was a recitation of the evidence by counsel. Clearly, the word is offensive but it was conceded that it was used by the direct supervisor. The finding by the trial judge that it was

neither excessive nor inflammatory should not be disturbed.

■ The contention that closing argument by counsel for the plaintiff amounted to a request for punitive damages is without merit. His appeal to the jury was consistent with the underlying purpose of the Kentucky Civil Rights Act. The brief reference to the City's recreation budget only arose because the City itself introduced the budget into evidence, and it did not have anything to do with damages in any way.

■ The trial judge reviewed the post-trial motions and denied the complaint that the verdict was excessive. The trial judge had the opportunity of hearing all the evidence and was in the best position to review the verdict for such an allegation. The evidence supported the verdict and there was no clear error. The inflamed jury argument was of no consequence. Proof of physical injury in this type of case is unnecessary because the harm suffered by the plaintiffs is embarrassment and humiliation. In any event the City cites no authority in support of its contention that the amount of the award was excessive. There is no evidence of any jury misconduct. The trial judge properly denied the motion by the City for a judgment notwithstanding the verdict and/or a new trial.

It is the decision of this Court that the instructions as given by the trial judge were consistent with the approach to the "bare bones" rule in Kentucky. Therefore, the opinion of the Court of Appeals is reversed and this matter is remanded to the trial court with directions to reinstate the judgment in favor of the appellants.

LAMBERT, C.J., JOHNSTONE, KELLER, and SCOTT, JJ., concur.

COOPER, J., dissents by separate opinion and is joined by GRAVES, J., who also files a separate dissenting opinion.

Dissenting Opinion by Justice COOPER.

I have no quarrel with the "bare bones" approach to instructing juries in Kentucky—so long as the jury is given all the bones. Because the jury was given less than a whole skeleton in this case, I respectfully dissent.

The law is clear that a hostile work environment claim cannot be premised upon one incident involving the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (quoting *Rogers v. Equal Employment Opportunity Comm'n*, 454 F.2d 234, 238 (5th Cir.1971)). "A recurring point in these opinions is that ... isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788, 118 S.Ct. at 2283. We adopted this principle verbatim in *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793 (Ky.2000), and noted that "[w]e are unable to find any authority holding that a single incident can support a claim for 'hostile environment' ...." *Id.* at 799.

The City admitted that on August 11, 1997, Appellants' supervisor accused Appellants of vandalizing his bicycle and referred to them on one occasion as "niggers," and that such constituted an act of racial discrimination/harassment. As a matter of law, however, that incident, standing alone, does not support a claim of hostile work environment. *Faragher*, 524 U.S. at 787, 118 S.Ct. at 2283; *Ammerman*, 30 S.W.3d at 799. Unfortunately, the instructions did not inform the jury of that fact, thus did not "properly and intelligibly state the law." *Howard v. Com-*

*monwealth,* 618 S.W.2d 177, 178 (Ky.1981). While Appellants introduced evidence from which a jury could believe that other incidents of racial discrimination occurred, the City offered evidence that could lead a jury to the contrary conclusion. Thus, the jury may well have decided this case solely on the basis of the August 11, 1997, incident. I do not believe use of the undefined term "pervasive" sufficed to inform the jury that it could not find for Appellants solely on the basis of that one incident.

Accordingly, I respectfully dissent and would affirm the Court of Appeals and remand this case for a new trial before a properly instructed jury.

GRAVES, J., joins this dissenting opinion.

Dissenting Opinion by Justice GRAVES.

I join Justice Cooper's dissent. However, I write separately to address the issue of excessive damages. An award of nearly one-half million dollars for an isolated incident is grossly disproportionate. These entry-level minimum wage seasonal employees failed to offer sufficient proof to justify such actual damages. The only rational explanation for this bonanza is that the award was intended to punish the City of Louisville. In these claims, punitive damages are not authorized by law. In fact, rewards of this nature will offer stiff competition to the lottery.

I would *sua sponte* remand to the circuit court for a new trial.