Charles **WILLIAMSON, Jr., Plaintiff,**

v.

Donna **SHALALA, Secretary, Department of Health and Human Services, Defendant.**

**Civil Action No. 95–1866 SSH.**

United States District Court, District of Columbia.

Jan. 30, 1998.

---

Sol Z. Rosen, Washington, DC, for Plaintiff.

Keith V. Morgan, Asst. U.S. Atty., U.S. Attorney's Office, Washington, DC, for Defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's motion to dismiss or, in the alternative, for summary judgment, and plaintiff's opposition thereto. Upon consideration of the entire record, the Court grants defendant's motion to dismiss in part, and grants summary judgment on the remaining claims. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," Fed.R.Civ.P. 52(a), the Court nevertheless sets forth its reasoning.

## BACKGROUND

Plaintiff, a black male who is mentally handicapped, has worked as a mail clerk at the Department of Health and Human Services ("HHS") since 1982.[1] Plaintiff was hired for a mail clerk position pursuant to a Schedule A Executive Appointment, following certification of his qualification for such an appointment as a mentally handicapped person.[2] Initially hired as a GS–2 Mail Clerk, plaintiff was promoted to the GS–3 level in 1987, in which position he currently remains.

On November 16, 1993, plaintiff informed HHS that he was receiving ongoing medical treatment for back injuries that he sustained in an automobile accident on July 13, 1993. Because he had exhausted all of his sick leave, plaintiff requested one week of advanced sick leave. HHS allegedly granted this request, as well as similar requests that plaintiff subsequently made.[3]

Plaintiff also informed HHS that, as a result of his injuries, he was unable to walk long distances, and thus required handicapped parking. HHS provided plaintiff with a temporary handicapped parking permit that was valid from January 1 to January 14, 1994, and from February 1 to February 11, 1994. Plaintiff did not receive an extension of this permit because, according to HHS, he was not eligible for one pursuant to the agency's parking policy. However, HHS informed plaintiff that he could apply for accommodation as a member of a carpool. Plaintiff submitted a carpool application, but HHS returned it because it lacked the required signatures of carpool members.

In March 1994, plaintiff submitted a request to his supervisor, Cappelli Burless, for an upgrade to the GS–4 level. Pursuant to Burless's request, plaintiff submitted a written description of the work he performed that supposedly would entitle him to a promotion. After reviewing plaintiff's statement in conjunction with position descriptions for GS–3 and GS–4 Mail Clerks, Burless concluded that plaintiff was not performing the work of a GS–4 clerk; rather, he was "just barely" performing that of a GS–3 clerk. Def.'s Mot. To Dismiss, Ex. 19.

On April 5, 1994, plaintiff contacted an Equal Employment Opportunity ("EEO") counselor at HHS. Plaintiff alleged that he was discriminated against on the basis of his race and sarcoidosis, an illness from which he allegedly suffered.[4] Unsatisfied with the counselor's subsequent proposals, plaintiff filed a formal administrative complaint with HHS on August 10, 1994. Specifically, plain-

---

1. Because plaintiff's pleadings do not allege any background facts, the Court must rely on defendant's recitation of such facts in her dispositive motion. The Court observes, however, that plaintiff does not contest the accuracy of these facts in his opposition pleading as they pertain to his employment record. Pl.'s Opp. to Def.'s Mot. To Dismiss at 1.

2. Plaintiff's employment records indicate that he has a Code 90 handicap, which is described as mental retardation. Def.'s Mot. To Dismiss, Ex. 3.

3. Plaintiff contests this factual allegation, as his first claim alleges that defendant never granted his requests for advanced sick leave.

4. Sarcoidosis is a disease of unknown causes that is characterized by persistent inflammation of tissue, and almost always affects the lungs. Def.'s Mot. To Dismiss, Ex. 31. (Plaintiff did not allege discrimination on the basis of his mental handicap or the injuries to his back that he had sustained in 1993.)

tiff alleged six acts of discrimination by the agency: (1) on November 16, 1993, plaintiff requested, but was denied, advanced leave; (2) plaintiff received no response to his February 2, 1994, requests for permission to receive phone calls at the office and for removal of boxes from his working area; (3) on February 15, 1994, HHS did not grant an extension of his temporary parking permit; (4) on March 15, 1994, management officials called plaintiff "boy"; (5) on April 4, 1994, plaintiff was denied a promotion to a GS–4 Mail Clerk; and (6) on April 7, 1994, Gail Atkins, a contract employee in plaintiff's office, "discussed how he worked on his work assignments and his handicap code with him."[5] Def.'s Mot. To Dismiss, Ex. 22. In July 1995, the EEO completed its investigation of the allegations in plaintiff's administrative complaint and provided him with a copy of its report.[6]

On October 2, 1995, plaintiff filed the instant action. His amended complaint invokes the Court's jurisdiction under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, and the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16 ("Title VII"), and alleges that plaintiff "has been denied terms and conditions of employment based upon his race and handicap." Compl. ¶ 3, at 2. Plaintiff's claims are particularly difficult to comprehend because his complaint does not allege specific acts of discrimination, but rather makes very general allegations. The Court accordingly assumes that plaintiff means to allege the same six acts of discrimination here that he alleged in his administrative complaint.[7] The Court analyzes each of these six claims in turn. For the reasons set forth below, the Court dismisses plaintiff's first three claims, and grants defendant's motion for summary judgment as to the remaining claims.

**5.** Presumably, plaintiff's sixth claim alleges that Atkins commented negatively on plaintiff's work capabilities and handicap. *See* Def.'s Mot. To Dismiss, Ex. 17.

**6.** Plaintiff neither sought a hearing before the Equal Employment Opportunity Commission nor requested a final agency decision.

**7.** Defendant makes this same assumption in her Motion To Dismiss, an approach to which plain-

## DISCUSSION

### I. *Claims 1–3*

As noted above, plaintiff's first three claims allege discrimination arising from three different events: (1) the alleged November 16, 1993, denial of his request for advanced leave; (2) the failure to respond to his February 2, 1994, requests for permission to receive phone calls at the office and to have boxes removed from his work area; and (3) the February 15, 1994, denial of an extended temporary parking permit. Defendant contends that plaintiff's claims are barred because he failed to adhere to the applicable administrative time limits. The Court agrees.

A plaintiff who wishes to institute a civil action against a federal agency for employment discrimination under Title VII and the Rehabilitation Act must first exhaust his administrative remedies. *See* 42 U.S.C. § 2000e–16(c); *United Air Lines v. Evans,* 431 U.S. 553, 555, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); 29 U.S.C. § 794a(a)(1) (procedures for Title VII claims applicable to claims under Rehabilitation Act); *Kien v. United States,* 749 F.Supp. 286, 289 (D.D.C. 1990), *aff'd,* 1991 WL 226742 (D.C.Cir. Oct.22, 1991) (Title VII requirement of exhausting administrative remedies applies to claims under Rehabilitation Act). As a general rule, non-compliance with administrative deadlines will bar a plaintiff from litigating his claims in court. *Brown v. Marsh,* 777 F.2d 8, 13 (D.C.Cir.1985). Before filing a formal complaint, an individual alleging discrimination under Title VII and the Rehabilitation Act must try to resolve the matter "informally" by contacting an EEO counselor within 45 days of the date on which the alleged discrimination occurred. 29 C.F.R. § 1614.105 (1997).[8] The 45–day time re-

tiff raises no objection in his subsequent pleading. *See* Pl.'s Opp'n to Def.'s Mot. To Dismiss.

**8.** The 45–day time limit replaced a previous 30–day time limit in 1992. *See* 57 Fed.Reg. 12646 (1992).

quirement is not jurisdictional, but rather operates "like a statute of limitations, [which] is subject to waiver, estoppel, and equitable tolling." *Saltz v. Lehman,* 672 F.2d 207, 208 (D.C.Cir.1982) (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)); *accord* 29 C.F.R. § 1614.604(c). Nevertheless, a plaintiff "bears the burden of pleading and proving in the district court 'equitable reasons' for non-compliance with the [45] day requirement." *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992) (quoting *Saltz,* 672 F.2d at 209).

 Plaintiff's first three claims are time-barred because plaintiff did not contact an EEO counselor within 45 days of the allegedly discriminatory actions and plaintiff has not given any equitable reasons for his non-compliance. The latest event that forms the basis of one of plaintiff's first three claims occurred on February 15, 1994, when HHS denied plaintiff an extension of his temporary parking permit. However, plaintiff did not contact the EEO counselor regarding any of these three alleged incidents of discrimination until April 5, 1994, over 45 days after they had occurred.[9] Thus, plaintiff's first three claims are untimely.[10] Moreover, plaintiff has not advanced any "equitable reasons," either in his complaint or his opposition to defendant's motion, for his failure to comply with this deadline. For example, plaintiff has not alleged a lack of knowledge of the 45-day requirement or the asserted discriminatory action. *See, e.g.,* C.F.R. § 1614.105(2). Because plaintiff has not met this burden, the Court dismisses his first three claims. *Saltz,* 672 F.2d at 209.

## II. Claims 4–6

Defendant moves to dismiss plaintiff's fourth and sixth claims for failure to state a claim or, in the alternative, for summary judgment, and moves for summary judgment on plaintiff's fifth claim. Because the Court has accepted and considered the exhibits and affidavits presented by the parties in deciding the motion as to plaintiff's fourth and sixth claims, it treats defendant's motion to dismiss these claims as one for summary judgment. *See* Fed.R.Civ.P. 12(b). Accordingly, the Court will grant defendant's summary judgment motion on all of the remaining claims only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. Claims 4 and 6

 Plaintiff's fourth claim alleges unlawful discrimination in violation of Title VII arising from a March 15, 1994, incident in which management officials allegedly called plaintiff "boy." This claim does not survive a motion for summary judgment because plaintiff has not pointed to "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *accord Celotex Corp.,* 477 U.S. at 324. In *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court recog-

---

**9.** Plaintiff's second claim alleges discrimination based upon defendant's failure to respond to his February 2, 1994, requests to receive phone calls and to have boxes removed from his work area. This claim differs from his first and third claims insofar as the alleged discrimination involved a lack of response, rather than a denial. Accordingly, February 2—the day of the request—cannot mark the appropriate date of the alleged discrimination for purposes of the 45-day requirement. Nonetheless, the claim is still untimely because, counting back from the date on which plaintiff contacted the EEO counselor, plaintiff had over two weeks to wait for the response. The Court concludes that it would be unreasonable for plaintiff to wait longer than two weeks for a response to such mundane requests.

**10.** Plaintiff has not shown how his first three claims qualify for the "continuing violations" exception, which would excuse their untimeliness. That rule requires that the first three discriminatory events be so related to the last three events, which fell within the 45-day period, that they formed a pattern of continuing discrimination. *See Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 473 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (to be continuing in nature, discrimination may not be "limited to isolated incidents but [must] pervade[] a series or pattern of events which continue to within" the timely period); *Milton v. Weinberger,* 645 F.2d 1070, 1077 (D.C.Cir.1981). Indeed, the first three events pertained to different subject matters and involved different employees at HHS.

nized that "not all workplace conduct that may be described as harassment affects a term, condition, or privilege of employment within the meaning of Title VII." 477 U.S. at 67 (internal quotation marks omitted). Indeed, the "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Id.* (quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972)). Despite plaintiff's broad allegations of being subjected to a hostile work environment at HHS due to his race, his only specific allegation, incorporated through his administrative complaint, is that management officials [sic] called him "boy" on one occasion. Standing alone, this incident would not "present a genuine issue for trial[,]" Fed.R.Civ.P. 56(e), because, even if true, it amounts to a single "utterance of . . . a[] racial epithet," which is insufficient to create a Title VII violation. *Meritor,* 477 U.S. at 67. Accordingly, the Court grants summary judgment on plaintiff's fourth claim.

■ Plaintiff's sixth claim fails under a similar analysis. As noted, it alleges discrimination from an April 7, 1994, incident in which Gail Atkins, a contract employee, allegedly commented negatively on plaintiff's work capabilities and handicap. *See* Def.'s Mot. To Dismiss, Ex. 17. Because Title VII does not apply to discrimination on the basis of a handicap, plaintiff presumably brings this claim under the Rehabilitation Act. Nevertheless, the standards set forth in *Meritor* for actions under Title VII also apply to claims under the Rehabilitation Act. *See*

*Barth v. Gelb,* 2 F.3d 1180, 1183–84 (D.C.Cir. 1993), *cert. denied,* 511 U.S. 1030, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994) ("reasonable for courts to look to the body of law developed under Title VII for guidance in enforcing comparable rights under the Rehabilitation Act"). Thus, as with his fourth claim, plaintiff's sixth claim does not survive a motion for summary judgment because it alleges only a negative comment on plaintiff's handicap, which amounts to nothing more than a perhaps comparable single "utterance of an [offensive] epithet." [11] *Meritor,* 477 U.S. at 67. Accordingly, the Court grants summary judgment to defendant on plaintiff's sixth claim.

### B. *Claim 5*

Plaintiff's remaining claim alleges that he was discriminated against on the basis of his race and having sarcoidosis when he was denied a promotion to the GS–4 level.[12] Defendant moves for summary judgment on the ground that plaintiff has not met his burden under the three-part procedure for evaluating discrimination claims set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court agrees.

In *McDonnell Douglas,* the Supreme Court "set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the plaintiff has the burden of proving a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. The burden then shifts to the

---

**11.** Even if the remarks alleged in plaintiff's fourth and sixth claims are considered in conjunction with each other, these two incidents do not create an atmosphere of harassment that survives the threshold test in *Meritor.* There, the Supreme Court stated that in order for harassment to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor,* 477 U.S. at 67. The Court concludes that the two incidents alleged in plaintiff's fourth and sixth claims do not amount to "severe" or "pervasive" harassment.

**12.** Presumably, plaintiff brings the handicap component of his fifth claim under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); defendant evaluated this claim under that section in her motion, without objection from plaintiff in his subsequent opposition. Section 504 states that: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

defendant to rebut the presumption of discrimination by proffering a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If a defendant does so, the plaintiff must show, by a preponderance of the evidence, that the defendant's asserted legitimate reason is a pretext for discrimination. *Id.* at 804; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). This tripartite framework also applies to actions under § 504 of the · Rehabilitation Act. *Barth,* 2 F.3d at 1185 ("courts allocating burdens of proof under the Rehabilitation Act have been prone to adapt and employ the familiar principles of *McDonnell Douglas* "); *Kien v. United States,* 749 F.Supp. 286, 289 (D.D.C. 1990) (sections of the Rehabilitation Act designed to parallel sections of the Civil Rights Act).

 Plaintiff has not made a prima facie showing of racial discrimination from HHS's denial of his request for a promotion. To establish a prima facie case, plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for a promotion to the GS–4 level; (3) he was rejected; and (4) other individuals with plaintiff's qualifications were given a promotion. *See McDonnell Douglas,* 411 U.S. at 802 & n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668. Notably, plaintiff has not indicated how he was qualified to receive a promotion to the GS–4 level. Indeed, the only support that plaintiff offers for his claim of discrimination is a statement that "a caucasian … and a Hispanic … have been trained for higher positions and have been passed over me. [] I am still a GS/3 while my rati[ngs] have been successful." Pl.'s Opp. to Def.'s Mot. To Dismiss, Decl. of Charles Williamson. However, this single allegation hardly suffices to meet plaintiff's obligation under *McDonnell Douglas* of pointing to actions by defendant "from which one can infer, if such actions remain unexplained, that it is more likely than not that

such actions were based on a discriminatory criterion illegal under [Title VII]." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) (internal quotation marks omitted). Moreover, plaintiff has not explained when or how the other two individuals came to receive their GS–4 positions. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992) (to compare treatment of discrimination victim to that of non-victims, plaintiff must show they are "similarly situated in all respects"). Thus, plaintiff has failed to establish a prima facie case of racial discrimination.[13]

 Nor has plaintiff met this burden under the Rehabilitation Act. To establish a prima facie case under § 504, a plaintiff

> must be handicapped under the Act, otherwise qualified to receive or participate in the federally supported benefit or program, and excluded from the benefit solely by reason of her or his handicap.

*Modderno v. King,* 871 F.Supp. 40, 42 (D.D.C.1994), *aff'd,* 82 F.3d 1059 (D.C.Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). Notably, plaintiff has not indicated that defendant denied his request for a promotion solely on the basis of his handicap. Critical in this regard is plaintiff's failure to allege discrimination on the basis of his mental retardation or the back injuries that he sustained in 1993, both of which were known to his supervisors. Rather, plaintiff claims discrimination on the basis of his sarcoidosis, but he has not alleged that his supervisors had knowledge of that condition. Indeed, as best as the Court is able to discern, they had little, if any, knowledge of his condition until after plaintiff had contacted the EEO counselor. Moreover, defendant has set forth credible reasons for denying plaintiff's promotion. *See supra* note 13. Thus, plaintiff has not estab-

---

**13.** Even if plaintiff had established a prima facie case, defendant proffered legitimate, non-discriminatory reasons for the denial of plaintiff's · promotion. First, after comparing plaintiff's work duties and performance to those of GS–3 and GS–4 Mail Clerks, plaintiff's supervisor concluded that he was "just barely" doing the work of a GS–3 clerk. Def.'s Mot. To Dismiss, Ex. 17.

Moreover, in a previous work performance evaluation, plaintiff scored only three on a five-point scale. Plaintiff has thus failed to meet his burden under *McDonnell Douglas* because he has not shown how these legitimate reasons for the denial of his promotion were a pretext for discrimination.

lished that the denial of his promotion stemmed solely from his sarcoidosis.

Because the Court concludes that there is no genuine issue of material fact and concludes that defendant is entitled to judgment as a matter of law, it grants defendant's motion for summary judgment as to plaintiff's fifth claim.

### CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss as to plaintiff's first, second, and third claims, and grants defendant's motion for summary judgment on plaintiff's fourth, fifth, and sixth claims. The case thus is concluded.

An appropriate Judgment accompanies this Opinion.

### JUDGMENT

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that the Court dismisses plaintiff's first, second, and third claims. It hereby further is

ORDERED, that the Court grants summary judgment to defendant on plaintiff's fourth, fifth, and sixth claims.

SO ORDERED.