**Adraine E. GILMORE, Plaintiff,**

v.

**Janet RENO, Defendant.**

**No. Civ.A. 96–1748 EGS.**

United States District Court, District of Columbia.

Sept. 30, 1998.

Keith V. Morgan, Assistant U.S. Attorney, Washington, DC, for Defendant.

Leizer Z. Goldsmith, Washington, DC, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Plaintiff Adraine E. Gilmore ("Gilmore") claims that her employer, the Immigration and Naturalization Service ("INS") discriminated against her on the basis of her race and sex when it removed her from her position without a formal personnel action and replaced her with a less qualified white male. Plaintiff also claims that the INS retaliated against her for bringing a discrimination claim by not offering her either of two jobs for which she was qualified and had applied. The INS has moved for summary judgment, arguing that Gilmore has failed to raise a triable issue of fact in support of her claims.

Upon consideration of defendant's motion to dismiss and for summary judgment and the responses and replies thereto, defendant's motion is **DENIED.**

## I. BACKGROUND

Gilmore, an African American woman, has been employed with the INS since 1981. In 1992, Gilmore was employed as Chief, Personnel Security/Suitability Section, a GS–13 position in which she had supervisory responsibilities. That same year, plaintiff's office, the Personnel Security Unit, was abolished as part of a reorganization plan consolidating all INS security functions into a newly-created Office of Security. The effect of this reorganization on plaintiff's position is in dispute. Plaintiff contends that her position continued to exist, but that she was removed from it and replaced by a white male. According to defendant, the effect of this reorganization was that the positions that existed before the reorganization no longer existed.

In January 1993, Kenneth Lopez, Director of the newly-created Office of Security announced in a memo that Gilmore and another employee, Barbara Perry, would be placed on a temporary detail for approximately two months to assist in the adjudication of backlogged cases. Although plaintiff retained her title and grade while she was on this detail, she was no longer performing supervisory functions. When Gilmore was placed on this detail, Lopez named Joyce Nicholson, an African American woman, and Lisa Murray as acting supervisors of the employees plaintiff had been supervising. The record does not indicate Murray's race.

In March 1993, two employees Gilmore had supervised prior to being placed on detail told her that a white male, Lloyd W. Cory, had been appointed to supervise them. Around that time, plaintiff asked Jerome

Verba, Deputy Director of the Office of Security at the time, when she would be taken off the detail and returned to her former position. Verba did not respond to plaintiff's inquiry.

In August 1993, Robert Longo was appointed as the Assistant Director for Personnel Security. Following his appointment, Gilmore asked Longo when she would be returned to her former position. Longo told her that she would not be returned to her former position. Immediately upon being informed of this, Gilmore initiated contact with an EEO counselor and in September 1993 filed an EEO complaint alleging, *inter alia,* discrimination in having been removed from her position and replaced by a white male.

In early 1994, while her EEO complaint was pending, Gilmore applied for two GS–14 positions in the Office of Security—Supervisory Industrial Security Specialist in the Personnel Security Program Management and Policy Section, and Supervisory Industrial Security Specialist in the Personnel Security Operations Section. INS's Personnel Management Branch certified a pool of candidates including plaintiff, James McLeod ("McLeod"), and Gloria Scott ("Scott"), as qualified for the two positions and eligible to be interviewed. Lopez was the Selecting Official responsible for making the final hiring decision, and he designated Longo as the Recommending Official to conduct the interviews. After conducting the interviews, Longo recommended that the positions be offered to McLeod and Scott. Lopez accepted Long's recommendations and offered the positions to those two candidates. McLeod and Scott accepted the offers. In March 1994, plaintiff was informed that she had not been selected for either position. Plaintiff initiated contact with an EEO counselor in April 1994, and in August 1994 filed a second EEO complaint, this time alleging that she was not selected for either position in retaliation for having filed her August 1993 complaint.

In March 1995, Lopez prepared a sworn affidavit responding to questions propounded to him as part of the administrative proceedings arising out of plaintiff's second EEO complaint. In that affidavit, Lopez stated that he selected McLeod for one of the positions because of McLeod's previous experience in security program management at the Department of Defense, because McLeod possessed broader security program knowledge than plaintiff, because McLeod possessed above standard oral and written communications skills, and because McLeod was able to effectively communicate with internal and external officials. At his September 1997 deposition for this case, Lopez stated that he selected McLeod because of McLeod's broad exposure to security matters and because McLeod had experience at other agencies with sensitive missions.

In the administrative affidavit, Lopez stated that he selected Scott for the other position based upon her qualifications in policy matters, that as a result of her Personnel experience she had a wider focus than plaintiff, she had demonstrated her lead capacity, she possessed above standard oral and written communications skills, and because Scott was able to effectively communicate with internal and external officials. At his deposition, Lopez stated that he selected Scott based on her background at Defense Investigative Service and personnel security and because of his first-hand knowledge of her abilities.

According to Longo's deposition testimony, he recommended that Scott be selected for the position rather than Gilmore because Scott had the knowledge and experience required for the position, because she came across as wanting to do a good job, and because Longo felt Scott had a better potential for growth and development in the position. Longo stated that although plaintiff was motivated, he felt that Scott came across as more highly motivated than plaintiff. Longo stated that although plaintiff had an interest in growing and developing in the position, he thought Scott's capacity for growth and development was superior to Gilmore's. Longo stated that although Scott had never been a supervisor, his observations of her as a team leader led him to believe that she would be an effective and competent supervisor.

In the administrative investigation, Lopez described the process by which he made his selection as follows:

> What Mr. Longo passed on to me was a confirmation about the skills and abilities of the candidates with which I was generally familiar. My process was that I agreed with his thoughts on his recommendations. I had no reservations concerning those recommendations. I did not look at the SF–171s or other application materials. I had either seen all their applications in the past when they applied for other positions in the Office of Security or was aware of their work, experience and backgrounds. Most of my knowledge was gained from their daily activities in their positions since March of 1992.

Lopez Aff. at 2.

The following exchange occurred when Lopez was questioned about how he made this decision his deposition for this case:

> Q   Did you review the position description prior to making up your mind as to who to select for these two positions?
>
> A   Position description and the 171's extensively.
>
> . . .
>
> Q   Did the 171's of the candidates impact your final decision as to who to hire?
>
> A   Yes.

Lopez Dep. at 87–88.

In the administrative investigation, Lopez gave the following response to a question regarding his knowledge of plaintiff's EEO activity when he made the selections:

> I knew the Complainant filed an EEO complaint prior to my selections for these positions. I learned this when an EEO counselor came to see me about her prior complaint. That could have been late 1992 or early 1993. Her prior EEO activity was not a factor in making my decision . . . The Complainant's prior EEO activity was the only EEO activity I knew about of all the

selections I made for the time period you ask.

Lopez Aff. at 5.

The following exchange occurred when Lopez was questioned about his knowledge of Gilmore's EEO activity at his deposition in this case:

> Q   Now, at the time when you made this selection, you were aware that Ms. Gilmore had filed an EEO complaint against the Agency previously, right?
>
> A   I don't recall that fact.
>
> Q   Did there come a time when you became aware of an EEO complaint by Ms. Gilmore?
>
> A   Yes.
>
> Q   When was that?
>
> A   Sometime after the selections.
>
> Q   And how do you know it was after the selections?
>
> A   I only became aware of it after the selections. I was contacted by the EEO office.
>
> Q   That's the first time they contacted you?
>
> A   Yes.
>
> Q   But hadn't Ms. Gilmore made a prior EEO complaint about other matters?
>
> A   I don't recall.

Lopez Dep. at 102.

Plaintiff is currently employed with the INS and holds the position of Chief, Compliance and Evaluation Section, a GS–14 position.

## II.   ANALYSIS

### A.   Counts I and II

Counts I and II of the complaint allege race and gender discrimination in violation of Title VII as a result of defendant allegedly removing plaintiff from her position without formal personnel action and replacing her with a less qualified white male.[1] Defendant advances two arguments as to why it is entitled to judgment on Counts I and II. Defen-

---

1.  Plaintiff's amended complaint also stated a Title VII claim arising out of an allegedly improper search of her office. In her motion for summary judgment, plaintiff has conceded that this claim is time-barred because she did not initiate contact with an EEO counselor within 45 days of the alleged search. This claim is therefore no longer before the court.

dant first argues that these two counts should be dismissed because plaintiff failed to exhaust her administrative remedies prior to bringing this claim. As an afterthought, defendant argues that if these two claims are not dismissed, it is entitled to summary judgment on those claims because plaintiff has not adduced any evidence that defendant's alleged legitimate, nondiscriminatory reasons for placing Gilmore on detail were a pretext.

### 1. Motion to Dismiss

The complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). We accept as true all of the complaint's factual allegations, *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 163–65, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), giving plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal,* 16 F.3d at 1276.

■ Prior to bringing a Title VII claim against a federal agency in court, a plaintiff must exhaust her administrative remedies. *United Air Lines v. Evans,* 431 U.S. 553, 555, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Williamson v. Shalala,* 992 F.Supp. 454, 457 (D.D.C.1998) ("non-compliance with administrative deadlines will bar a plaintiff from litigating his claims in court"). Guidelines enacted pursuant to Title VII require that an aggrieved person initiate contact with the EEO counselor within 45 days of the matter alleged to be discriminatory, "or in the case of personnel action, within 45 days of the effective date of that action." 29 C.F.R. § 1614.105(a)(1). The 45 day time limit on EEOC actions is not jurisdictional, rather it operates like a statute of limitations. *See Williamson,* 992 F.Supp. at 458 (quoting *Saltz v. Lehman,* 672 F.2d 207, 208 (D.C.Cir. 1982)).

According to the complaint, plaintiff filed an EEO complaint in August 1993 alleging that her assignment to the temporary detail was discriminatory. The complaint alleges that plaintiff was assigned to the detail effective January 1993 and that in August 1993, plaintiff was informed by Longo that she would not be returning to her previous duties. The complaint also alleges that a white male assumed her regular duties at the time the plaintiff was put on this detail.

Defendant argues that plaintiff's complaint is time-barred because she did not initiate the EEO process until August 1993, more than 45 days after the effective date of her January 1993 detail assignment. Plaintiff responds that she was not discriminated against until August 1993 when she was finally informed that she would not be returning to her prior position. Gilmore alleges that upon being informed of this, she contacted an EEO counselor to initiate the administrative process.

■ Plaintiff's Title VII claims are not time-barred. Plaintiff's assignment to the detail in January 1993, although arguably a "personnel action," did not become a "discriminatory matter" until she was informed in August 1993 that she would not be returned to her former position. Upon being informed that she would not be returned to that position, and with the understanding that a white male had been given her former duties, plaintiff contacted an EEO counselor and initiated the administrative process. Plaintiff has therefore exhausted her administrative remedies, and may bring her Title VII claims in this Court.

Defendant's motion to dismiss Counts I and II of the complaint is therefore **DENIED.**

### 2. Motion for Summary Judgment

As an afterthought, defendant argues that if its motion to dismiss is denied, it is nonetheless entitled to summary judgment on Counts I and II because plaintiff has adduced no evidence to prove that defendant's legitimate, nondiscriminatory reasons for detailing plaintiff were a pretext.

Summary judgment should be granted pursuant to Federal Rule of Civil Procedure 56 only if there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992).

The Supreme Court has laid out a burden shifting framework to be applied in Title VII cases. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff has established a *prima facie* case, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence that defendant had a legitimate, nondiscriminatory reason for its action. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817.

██ Defendant concedes that plaintiff has made out a *prima facie* case of race and gender discrimination; but argues that summary judgment is appropriate because defendant had legitimate, nondiscriminatory reasons for placing plaintiff on the detail and Gilmore has failed to adduce any evidence that these reasons were pretext for discrimination. In particular, the INS claims that several employees were placed on the detail to clear a backlog of cases and that this is an appropriate way for the agency to allocate its employees in the best way to accomplish its mission. Aside from this conclusory statement, defendant has not produced any evidence in the record to support these assertions.

Defendant's motion for summary judgment as to Counts I and II is therefore **DENIED.**

## B. Count IV[2]

Count IV of the complaint alleges retaliation in violation of Title VII as a result of defendant's failure to offer plaintiff either of two positions for which she was qualified and had applied. Defendant argues that it is entitled to summary judgment on Gilmore's retaliation claim because it had legitimate nonretaliatory reasons for not offering either position to plaintiff. Plaintiff responds that defendant's proffered reasons are a pretext for its retaliatory actions.

The Supreme Court's burden shifting framework applies to retaliation claims brought under Title VII. *See Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395 (D.C.Cir.1988) Once the plaintiff has established a *prima facie* case, "the defendant may introduce rebuttal evidence providing legitimate, nonretaliatory reasons for its conduct. The plaintiff may then attempt to show that the defendant's asserted justification is 'merely a pretext' covering up unlawful retaliation through the guise of business planning." *Berger,* 843 F.2d at 1423 (quoting *Williams v. Boorstin,* 663 F.2d 109, 116 (D.C.Cir.1980)).

Defendant concedes that plaintiff has made out a *prima facie* case of reprisal in selection, and argues that it had the legitimate, nonretaliatory reasons for selecting McLeod and Scott explained in the affidavits and depositions. Defendant's evidence in support of its claim that it had legitimate reasons for not selecting plaintiff for either position shifts the burden back to Gilmore.

Plaintiff advances a number of arguments in support of her contention that defendant's proffered reasons for not offering plaintiff either position are a pretext for prohibited retaliation. Plaintiff argues that since Lopez, the official responsible for making that employment decision, has given conflicting testimony regarding his knowledge of plaintiff's EEO activity and the process by which he decided who should be offered the positions, this raises a triable issue of fact.

While plaintiff's EEO complaint arising out of her January 1993 detail and alleged replacement by a less-qualified white male was pending, she applied for and was rejected for two positions for which she was qualified. In his administrative affidavit, Lopez stated that he was aware of Gilmore's EEO activity at the time he made the selections for the two

2. Count III of the complaint was dismissed by stipulation of the parties.

GS–14 positions. Yet at his deposition, Lopez stated that he was not aware of any prior EEO activity by Gilmore at the time he made those selections. As to Lopez' role in deciding who should be selected for the two positions, Lopez stated in his affidavit that he did not consult the candidates' SF–171s. Rather, he relied on his personal knowledge of the candidates and Longo's recommendations. Yet at his deposition, Lopez claims to have "extensively" reviewed each candidates' SF–171.

■ Defendant explains these inconsistencies as the natural result of the two-year gap in time between Lopez' affidavit and deposition. A gap in time could account for Lopez' inability to remember whether plaintiff had prior EEO activity, or how he made his selections. Here, however, Lopez gave conflicting testimony regarding his knowledge of plaintiff's EEO activity at the time he decided not to offer her a position. As a result of this inconsistency, a jury could infer that plaintiff's prior EEO activity played a role in Lopez' decision not to offer plaintiff one of the positions. Lopez also gave conflicting testimony regarding the process by which he made the two selections. As a result of this inconsistency, a jury could infer that Lopez has a motive to alter his description of how he made that decision.

For these reasons, summary judgment is inappropriate and defendant's motion is **DENIED.**

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's Motion to Dismiss Counts I and II [44–1] of the complaint is **DENIED;** and it is further

**ORDERED** that defendant's motion for Summary Judgment as to Counts I and II [44–2] of the complaint is **DENIED;** and it is further

**ORDERED** that defendant's motion for summary judgment with respect to Count IV [44–2] of the complaint is **DENIED.**