RENDERED: MAY 28, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1299-MR

MICHELLE PHILLIPS; ANN                                    APPELLANTS
RODGERS; AND LALLIE DAVIS


APPEAL FROM TAYLOR CIRCUIT COURT
v.       HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 18-CI-00019


ANN D. BALL; EDWARD D. JONES                              APPELLEES
& CO., L.P.; AND W.G. BALL, JR.


AND


NO. 2019-CA-1372-MR

ANNA D. BALL                                       CROSS-APPELLANT


CROSS-APPEAL FROM TAYLOR CIRCUIT COURT
v.       HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 18-CI-00019


ANN RODGERS; EDWARD D.                             CROSS-APPELLEES
JONES & CO., L.P.; LALLIE DAVIS;
MICHELLE PHILLIPS; AND W.G.
BALL, JR.

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

LAMBERT, JUDGE:  These appeals arise from a petition for declaration of rights filed by Ann D. Ball[1] (Mrs. Ball) related to the ownership of funds deposited in an investment account held by Edward D. Jones & Co., LP (Edward Jones).  Three of the defendants have appealed from various orders of the Taylor Circuit Court, including the denial of their motion for summary judgment and the final judgment entered following a jury trial.  Mrs. Ball has cross-appealed from the order denying her request for costs.  We affirm.

Mrs. Ball filed a complaint on January 12, 2018, naming Edward Jones[2] and her five children, Carrie Ball, Michelle Phillips, W.G. Ball, Jr., Lallie Davis, and Ann Rodgers as defendants.  In her complaint, Mrs. Ball sought a reformation of agreements and/or a declaration of rights to establish that she was the sole owner of Edward Jones Account No. 407-12316-1-9 (Account No. 3).  She explained that in January 2004, she and her husband, William Garland Ball

---

[1] Ann D. Ball's first name is mistakenly listed as "Anna" in both the complaint and in the notice of cross-appeal.  We shall use her correct first name when we refer to it in this opinion.

[2] Early in the proceedings, Edward Jones filed a motion to compel arbitration and stay the proceedings.  In March 2018, the circuit court entered an agreed order holding this motion in abeyance pending further litigation of Mrs. Ball's claims, noting that she had not asserted any affirmative claims against Edward Jones.

-2-

(Garland), opened Edward Jones Account No. 407-08088-1-3 as joint tenants with right of survivorship with a deposit of $50,000.00 (Account No. 1). Garland passed away in April of 2005, and in May of that year, the assets from that account were transferred to Edward Jones Account No. 407-11481-1-0 (Account No. 2). This account was registered to Mrs. Ball and two of her daughters, Carrie and Lallie, as joint tenants with right of survivorship. Mrs. Ball alleged that she did not understand that this transfer would divest her of any of her ownership interest in the account. She believed the transfer would permit Carrie and Lallie to have access to information about the account to assist her with her investment decisions. In June 2005, Mrs. Ball deposited an additional $301,500.00 into Account No. 2. The same month, Mrs. Ball set up a systematic withdrawal ACH option to obtain $1,080.00 per month from this account.

In July 2006, the assets from Account No. 2 were transferred to Account No. 3, registered to Mrs. Ball and all five of her children as tenants in common. As with Account No. 2, Mrs. Ball did not understand that any of her ownership interest in the funds was being divested. She believed the transfer was to permit her children to access information about the account in order to assist her with investment decisions. In August 2006, Mrs. Ball set up an ACH option to obtain $1,080.00 per month from Account No. 3. In October 2009, Mrs. Ball deposited an additional $100,000.00 into this account. As of July 2017, the

account balance totaled $642,209.82. Mrs. Ball was sole contributor of funds deposited into the account; the children did not deposit any of their individual funds into it. Mrs. Ball alleged that the purpose of the account was for her sole benefit and that the account documents did not reflect the true intent of the parties in identifying ownership. The children should not have been listed as tenants in common as Mrs. Ball should have been listed as the full owner. Mrs. Ball was refused access to the account by the children, which led to the filing of the action.

Based upon these allegations, Mrs. Ball alleged causes of action for mutual mistake, unilateral mistake, and lack of consideration, and she sought reformation of the Account No. 3 documents to confirm she was the sole owner. She sought a declaration of rights pursuant to Kentucky Revised Statutes (KRS) 418.040 and requested that the account be held in constructive trust for her benefit. In addition, Mrs. Ball sought a trial by jury and costs. Defendant W.G. Ball, Jr., (Dubby) filed an entry of appearance and stated that he believed the allegations in the complaint were true and did not want to file any pleadings. Defendant Carrie Ball filed a *pro se* answer responding to Mrs. Ball's complaint. While she insisted that she and her other siblings had an ownership interest in Account No. 3 pursuant to Mrs. Ball's wishes, Carrie stated she was voluntarily removing herself from the Edward Jones account because she needed "some peace" in her life. The court

entered a judgment on the pleadings against Carrie on Mrs. Ball's motion in March 2018, ordering Carrie's removal from the Edward Jones account.

The remaining children, Michelle, Lallie, and Ann (hereinafter, "the Ball Children"), continued to defend against Mrs. Ball's claims and filed an answer. They claimed that Mrs. Ball had failed to state a claim for which relief may be granted and affirmatively pled the defenses of equitable estoppel, statute of limitations, and breach of contract.

In August 2018, the Ball Children filed a motion for summary judgment seeking dismissal of Counts I, II, IV, and V of Mrs. Ball's complaint. They alleged that Mrs. Ball's claims of mutual and unilateral mistake in the first two counts were barred by the applicable ten-year statute of limitations as set forth in KRS 413.130. As the contract at issue was entered into in June 2006, the filing of the complaint in 2018 was untimely. They also argued that Counts IV and V (for a declaration of rights and constructive trusts) were both derivative of the underlying theory of the case and should be dismissed.

In response, Mrs. Ball argued that summary judgment was premature as discovery had not been completed. She also argued that the Ball Children were estopped from making a statute of limitations argument because fraud and mistake claims are also governed by a statute of repose (KRS 413.130(3)), which extends the date on which a cause of action accrues until the mistake was discovered. She

relied upon the confidential relationship between her and her children and asserted that she did not know about the ownership of the account until 2016, when she was denied access to the funds. In reply, the Ball Children continued to dispute that the action was timely filed.

In December 2018, Mrs. Ball filed a motion for summary judgment. She argued that there was no consideration for the account registration contract to support the Ball Children's claim of ownership in Account No. 3 as there was no bargained for exchange. The Ball Children did not have a fixed obligation, did not suffer any detriment, and did not deposit any of their own money into the account. She concluded that as a matter of law, there was no consideration because no benefit was conferred on one party and no detriment suffered by another party. The Ball Children disputed this argument.

In January 2019, the Ball Children moved the court to hold a bench trial in this matter. They noted that they had sought summary judgment on two grounds: namely, that the complaint was barred by the applicable statute of limitations and that there was a valid contract between Edward Jones and the parties, which defeated Mrs. Ball's claim of lack of consideration. Because the remaining claims for a declaration of rights and a constructive contract were questions of equity, a jury trial was not available.

On January 22, 2019, the court heard arguments on the parties' motions for summary judgment. The parties presented their arguments regarding the application of the statutes of limitation and repose as well as the consideration question. Counsel for the Ball Children opted to continue the motion for a bench trial as the court's ruling on these motions might have some bearing on it. However, counsel did state that they had reservations about allowing people in the community to have access to information about their mother's finances as it was not in her best interests. The parties disagreed about whether there were factual issues for a jury to decide.

On January 31, 2019, the court entered its findings of fact, conclusions of law, and order on the cross-motions for summary judgment. It noted that Mrs. Ball argued that her sole purpose of including her children on Account No. 3 was to permit their input in the management of the account if she could not do so and to ensure the account would equally pass to her children upon her death. Only when she unsuccessfully sought to increase her monthly stipend did Mrs. Ball discover that the account was not set up as she intended and that her daughters had attempted to liquidate the account. The Ball Children, the court went on to state, argued that Mrs. Ball had consciously added the remaining children to Account No. 3 to treat all of her children equally, which allowed them all to have full ownership of access to the account.

The court then addressed the legal arguments, including whether the statute of limitations barred Mrs. Ball's action and if the doctrine of equitable estoppel applied to defeat the limitations period. The court concluded that "as a matter of law, the claim herein would be statutorily barred but for issues of estoppel." It then stated that "a confidential and fiduciary relationship existed between [Mrs. Ball] and the [Ball Children], at the time the contract was made, on which [Mrs. Ball] relied." Although Mrs. Ball had not pled equitable estoppel in her complaint, the court concluded that "the facts are fully stated and relied on in the petition." Therefore, it ruled that the statute of limitations did not begin to run until Mrs. Ball learned of the mistake and that the Ball Children were estopped from arguing otherwise. As to whether there was consideration to support the contract, the court found that the contract was between Edward Jones and the Ball family members; whether this contract included a mistake was for a jury to decide. Finally, the court concluded that the counts related to a declaration of rights and a constructive trust were derivative and would be questions of law for the court to decide when the other counts had been resolved. The court denied both motions for summary judgment and scheduled a review to assign a jury trial date, which was later scheduled for June.

After further discovery on equitable estoppel and fraud, on April 29, 2019, the Ball Children moved the court for an order prohibiting Mrs. Ball's claim

of equitable estoppel and to reconsider its prior order as to the ruling on the statute of limitations. They argued that Mrs. Ball had not specifically pled a claim for equitable estoppel and had not moved to amend her complaint since the court heard arguments from the parties. In addition, they argued that Mrs. Ball had failed to offer any affirmative evidence to support her claim of equitable estoppel. They also argued that the confidential relationship between the parties did not prevent Mrs. Ball from discovering her mistake. Mrs. Ball opposed this motion.

On May 8, 2019, the court entered an order denying the Ball Children's renewed motion for summary judgment:

> The Court again concludes that based upon the confidential relationship which existed between the parties, as evidenced by the parties' familial status and one of the Defendants previously being the Plaintiff's power of attorney, the statute does not begin to run until actual discovery of the fraud or mistake. The Court is persuaded by the Plaintiff's argument that none of the cases cited by the Defendants apply estoppel to deny a limitations or repose defense under KRS [413.130(3)] which speaks in terms of the elements of equitable estoppel typically asserted as an affirmative claim. The jury will be given an instruction regarding whether they believe the Plaintiff had actual discovery of the fraud or mistake more than ten years prior to the initiation of this proceeding.

Later that month, the Ball Children filed for leave to file an amended answer and tendered a proposed amended answer, which included a counterclaim against Edward Jones and a cross-claim against Mrs. Ball. The counterclaim

-9-

addressed: 1) the possibility that Mrs. Ball may be planning to introduce evidence at the trial that Edward Jones had not created the account to her specifications or changed the type of account without seeking her authorization; and 2) that Mrs. Ball brought the suit for harassment purposes, which constituted abuse of process. In the cross-claim, the Ball Children sought to allege that if the account were to be reformed, the mistake was caused by the negligence of Edward Jones, and they should be entitled to their interest in the account.

In addition to moving to file the amended answer, the Ball Children moved to dismiss Mrs. Ball's complaint for failure to state a cause of action against them pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f) and for failing to assert a claim against an indispensable party (Edward Jones) pursuant to CR 19.01. They noted that Mrs. Ball's complaint did not allege a cause of action against Edward Jones but merely sought reformation of the contract with that entity. However, they asserted that a claim of unilateral mistake did not provide a basis to reform a contract and that fraud, which had not been asserted here, was necessary to prove unilateral mistake.

Mrs. Ball objected to both motions, and the court heard arguments on May 21, 2019. By order entered May 24, 2019, the court denied both motions.

The Ball Children filed a motion *in limine* regarding the claim of unilateral mistake. Such a claim, they argued, was not grounds for reformation of

a contract and required proof of fraud. They noted that Mrs. Ball stated that her children had done nothing wrong, and she had not alleged fraud. Based upon these statements, the Ball Children argued that any instruction for unilateral mistake would be improper. They also noted that Mrs. Ball stated she mistakenly sought reformation when she actually meant rescission; she should not be permitted to assert a new form of relief or cause of action. In her response, Mrs. Ball argued that the Ball Children had misstated the law applicable to unilateral mistake and that proof of fraud is not required. Rather, a contract may be rescinded based on either fraud or mistake. The court denied this motion in a calendar order entered June 4, 2019.

The court held a jury trial beginning on June 10, 2019. Edward Jones account representative Larry Bowen was the first witness to testify in Mrs. Ball's case. While he had not set up the account at issue, he had been managing the joint account since February of 2007. He testified that the account had never been anything but a joint, tenancy-in-common account.

Mrs. Ball testified next. She was 83 years old at the time of the trial. Her husband, Garland, passed away in April 2005. At the time of Garland's death, Mrs. Ball owned a farm, and she had a checking account of less than $10,000.00 and $50,000.00 in an Edward Jones account. She also had $100,000.00 from the sale of part of the farm property. She and Garland had both been getting social

security checks. Mrs. Ball testified about help her children had provided to her over the years. She paid Ann $100.00 per week to do bookwork for her, both before and after Garland passed away. Ann had also served as her power of attorney, and she would take care of her financial documents that came in the mail. Mrs. Ball signed a document to formally appoint Ann and Michelle as her powers of attorney right after Garland's death.

After Garland's death, Mrs. Ball and the children received proceeds from his $400,000.00 life insurance policy. Mrs. Ball received half of the proceeds, and the children split the other half. She deposited her half in her account at Citizens Bank. She discussed with her children what she should do with the funds from the insurance proceeds and other cash assets she owned ($50,000.00 from Account No. 1 and $100,000.00 from the property sale). She decided, after discussing this with her children and hearing presentations from Edwards Jones advisors, to invest her funds with Edward Jones.

Mrs. Ball testified extensively about the Edward Jones accounts. She understood the ownership of the accounts was that it was her money and that she had put it into the original Edward Jones account she had with Garland (Account No. 1). She thought she would be able to use the money any time she needed or wanted it, and it would go to her five children at her death. She thought the children understood this. Mrs. Ball wanted her children to be able to keep up with

what was going on in the account, and she did not have any reservations about her children knowing about her financial situation. Her daughters assisted her with the account.

Mrs. Ball believed her son had called Edward Jones to set up Account No. 2 after the family meeting. Account No. 2 that was set up included herself and two of her daughters. However, she testified that she would never have set up an account that purposely excluded any of her children. That was inconsistent with her understanding of her meeting with her children. She had not intended to give them any of her money during her lifetime; they would get the money at her death. Mrs. Ball said she signed whatever documents were given to her, but she did not believe they reflected what she had agreed to. She did not believe the daughters would have access to any of the money in the account during her lifetime. Mrs. Ball did not like the way Account No. 2 had been set up because she thought that if she died, only those two children would get the money from the account. To avoid conflict, she insisted that the signatures of all five of her children be on the documents so they could get her money after her death. She did not intend for them to have access to the funds while she was still alive. She did not know if the children knew that, and they never asked her. Mrs. Ball did not impose any obligations on her children with regard to the account. If they were available, they could attend meetings at Edward Jones with her. But they were not under any

obligation to do so. She merely wanted them all to have access to information about the account.

Mrs. Ball testified that she did not understand what tenancy-in-common meant. She thought the children's names were on Account No. 3 because they got the money when she died. She admitted that documents were sent out periodically from Edward Jones; these were the types of documents she would give to Ann to go through.

In 2016/2017, Mrs. Ball decided she wanted to increase her monthly stipend payment to $2,500.00. She went to Edward Jones and asked them to put this in place. Edward Jones denied this request, she testified, because "the girls said no." Prior to this time, she did not know that her children had the right to deny her access to the account funds. That was the first time she became aware that Account No. 3 had been set up in a way that was inconsistent with what she understood the agreement to be. She thought the children understood that they would not get the money from the account until she passed away. It was a mistake that the documents provided that they did have an ownership interest during her lifetime. She learned that she only owned $100,000.00 of the $600,000.00 in the account.

On cross-examination, Mrs. Ball said she was mistaken, not that Edward Jones had done anything wrong or that any forgery had taken place. She

did not claim there was any misrepresentation; she signed what they told her to sign. She thought both Account No. 2 and Account No. 3 had been set up incorrectly. She said she received statements from Edward Jones for the last 14 years in the mail, and she acknowledged that a dividend check received in 2013 was signed by her and all of her children. She cashed the check and used the money. Mrs. Ball continued to testify she thought it was all her money; she did not realize that the money was for all of them. She never contacted Edward Jones to question why mail was being sent to her with all of the children listed on it.

Regarding her relationship with her daughters, Mrs. Ball stated that the day before the family met to disburse the Fifth Third Bank settlement related to Garland's business interest, she got into a disagreement with two of the daughters related to how it would be split. She acknowledged that the daughters had worked hard on the Fifth Third Bank lawsuit for approximately ten years; her son was not involved in that litigation. The daughters were upset that the son (their brother) visited the attorney's office after the settlement proceeds were received. Mrs. Ball told Carrie there would be repercussions because of the fit she threw in the attorney's office. At some point, she removed Ann as her power of attorney. Her son was currently her power of attorney and had been since March of 2016. She did not really know what his duties were as power of attorney. She admitted that

she had a habit of signing documents when she did not know what they stated. She had been doing this for her husband for years.

On redirect examination, Mrs. Ball stated that she was "pretty sure" the children knew they did not have an ownership interest in the account based on their meeting. As to her husband's estate, Mrs. Ball stated that her son was the executor of the estate when he passed away. The daughters were not named as executors in the will. Mrs. Ball was unsure of what happened with Garland's estate, although it appears that half of his estate would be placed into a trust for her, she would receive the other half of the estate, and the Fifth Third Bank settlement was to be paid into the estate. Regarding the disbursal of the Fifth Third Bank settlement funds, Mrs. Ball testified that when she arrived at the office, there were two sets of checks that had been drafted. One group contained five checks dividing the whole settlement between the children. The second group with six checks also included a check for Mrs. Ball, and the proceeds were divided equally between Mrs. Ball and the children. She did not like these options because it was supposed to be her money. She wanted to distribute the money pursuant to the terms of Garland's will. The daughters got upset when she said this, as the will provided that the children would not receive any funds during Mrs. Ball's lifetime. Mrs. Ball gave the children 25% of the Fifth Third Bank settlement proceeds to resolve the issue. The proceeds did not go into Account No. 3.

Mrs. Ball learned in 2016 that, after she had requested an additional stipend from the account, the daughters through their counsel had contacted Edward Jones seeking to liquidate the Account No. 3 and split the proceeds six ways. She did not agree with this. She admitted that she had asked Edward Jones to liquidate the account and give her all of the proceeds. She did not believe the daughters had committed any fraud, but she did not know how the account was mistakenly created in 2005. She did not know that Edward Jones had done anything wrong. She did not know how the mistake happened.

Michelle Phillips testified next. She is Mrs. Ball's second child. She did not put any money in the Edward Jones accounts. She did not receive any income from or pay any taxes on them. The dividend check that the children endorsed and gave to Mrs. Ball was just over $100.00. Michelle and her siblings agreed that the money was in safekeeping to take care of their mother, such as if she had to enter a nursing home. They did not plan to use the money until Mrs. Ball passed away. Everything had been explained to Mrs. Ball from the time the discussions started in 2005. It was the son's idea to put all of the children on the account, and Mrs. Ball wanted this to happen. Michelle knew this was a joint account; everyone, including Mrs. Ball, was there when this was discussed.

Ann Rodgers testified next. She is the youngest of the siblings. She served in the past as Mrs. Ball's power of attorney, and she had taken care of her

parents' bills.  She continued to take care of her mother's bills after her father passed away.  Mrs. Ball would look through the mail first; Ann would pay the bills Mrs. Ball put on the table.  She was paid $100.00 per week to perform this work.  She continued to do this until "all this happened."

Ann testified about Mrs. Ball's financial situation.  Mrs. Ball received $200,000.00 in insurance proceeds, and the siblings received $200,000.00 that they split.  There was also $100,000.00 that Mrs. Ball had from selling part of the farm.  She denied that there was a discussion of what would happen with Account No. 3 upon Mrs. Ball's death.  Her recollection was that they discussed that they would not touch the money until Mrs. Ball passed away so that Mrs. Ball would have something to live on.  She did not agree with Mrs. Ball's understanding of what they agreed to at the meeting (that the money was Mrs. Ball's during her lifetime, and that it would be transferred to the five children equally at her death).  She thought her mother was fabricating her memory.  She thought the agreement was: Account No. 2 was set up because if something happened and Mrs. Ball had to go in a nursing home, the money would be there to protect her.  It had been set up as a joint account with right of survivorship.  Mrs. Ball insisted all of the children put their names on the account, although not with the right of survivorship, because the last one surviving would be the sole owner of the money.  That was not how Mrs. Ball wanted it.

Prior to 2016, when she asked for an increase in her stipend and for an additional $30,000.00, Mrs. Ball had never asked for money from the account. She thought her mother lied about what she needed the extra money for. Ann testified that Mrs. Ball had spent too much money on QVC and HSN in the past. Mrs. Ball had just received a check for $82,000.00; she wanted Mrs. Ball to ask Ann for the extra money and tell her why she needed it without lying about it. When Larry Bowen called her and told her that her mother and her brother were in the office asking for additional funds and the reason for the request, Ann said that if her mother needed money, she could ask her. She did not have any problem giving her mother money and that Mrs. Ball had denied needing any extra money when Ann had previously asked her. She discussed threats from her brother and her uncle (Mrs. Ball's brother) about Mrs. Ball's access to the account and funds. Ann related her distrust of her uncle because of bad financial experiences between her father and her uncle in the past, including unpaid loans and a lawsuit. Mrs. Ball told them there would be repercussions for the way the sisters treated their brother.

Bill Durham testified next. He is Mrs. Ball's brother. Mrs. Ball told him that the account was her money and that the funds were to go to the children when she passed away. He did not recall making any threats to the family members. He did want everyone to talk and resolve the situation. He did not have any personal knowledge of how the accounts were set up.

Dubby Ball testified next. He testified that Account No. 3 was his mother's property and that he and his siblings would split the account when she died; that was what they all understood. He believed he had an interest in the account when his mother passed away, but not until then. He did not read the Edward Jones account statements he received in the mail.

Mrs. Ball closed her case after this witness. The Ball Children moved for directed verdicts on the claims for mutual and unilateral mistake. As to mutual mistake, the Ball Children argued that there was no evidence that Carrie or Lallie were mistaken regarding the account agreement. As to the unilateral mistake claim, they argued that no reasonable juror could find that Mrs. Ball had acted with due diligence or that rescission of the contract would not seriously prejudice them. The court denied both motions, ruling that there was enough evidence in a light most favorable to Mrs. Ball to permit the jury to decide the factual disputes.

For their case, the Ball Children called Lallie Davis as the first witness. She believed she had a 1/6th interest in Account No. 3. She had owned a 1/3rd interest in Account No. 2 with her mother and her sister, Carrie. Account No. 2 had just over $300,000.00 when it was closed and moved to Account No. 3. She did not believe that Mrs. Ball thought she (Lallie) did not own a part of the account. She did not believe that Edward Jones had set up the account in a way that Mrs. Ball did not want and that Mrs. Ball was not mistaken as to how the

account was set up. On cross-examination, Lallie admitted that she never put any of her own money into, or paid any taxes on, any of the accounts. The one dividend check received from Edward Jones was turned over to their mother.

Nathan Rodgers testified next. He is Ann's son and Mrs. Ball's grandson, and he had a past business relationship with his Uncle Dubby. They worked with equipment and in construction. This stopped in March 2016, when Dubby said he could no longer take the equipment to a family member's house for free. Dubby also indicated he was unhappy with his sisters and would "get the last laugh" in relation to the Fifth Third bank settlement. Nathan did not have any knowledge of the setting up of the Edward Jones accounts.

The Ball Children also presented testimony from Carrie, Dubby, and Ann, as well as from Craig Cox, who had represented Garland and discussed estate planning with him.

At the close of the Ball Children's case, Mrs. Ball moved for a directed verdict on her claim of lack of consideration for the contract. The court denied this motion, ruling that love and affection can be lawful consideration. The Ball Children moved for directed verdicts on the same grounds they had earlier, including lack of due diligence and that Mrs. Ball had sufficient time to discover her mistake. The court again denied the motions.

The parties and court then addressed jury instructions. Mrs. Ball argued that the jury should be instructed on consideration and that the question as to whether the Ball Children would suffer serious prejudice if the Edward Jones account were to be set aside was a question of law not fact. The Ball Children argued that the jury should not be instructed on the unilateral mistake claim and that due diligence should be instructed as an element of mutual mistake. The court ruled that consideration for a contract is a legal question, not a factual one; whether the Ball Children would suffer serious prejudice was a question of fact for the jury; due diligence was not an element of mutual mistake for purposes of the jury instructions; and sufficient evidence was introduced to permit the court to instruct the jury on unilateral mistake.

Following deliberations, the jury returned a verdict answering "Yes" on Interrogatory No. 1, finding that Mrs. Ball "was mistaken in regard to the ownership of the Edward Jones Account number . . . when she executed the Account Authorization and Acknowledgement form on September 7, 2005 and that she believed she was authorizing Edward Jones to create an account solely owned by [her]" and that her mistake "was as to a material fact of the Edward Jones account." On Interrogatory No. 2, the jury answered "No" and found that the Ball Children were not mistaken in regard to the ownership of the Edward Jones account when they executed the account forms and did not believe they were

authorizing the account to be solely owned by Mrs. Ball.  As to Interrogatory No.

3, the jury answered "Yes" to the following:

> Do you believe, by clear and convincing evidence, each of the following with respect to the mistake claimed by [Mrs. Ball] in regard to the Edward Jones account about which you have heard evidence:
>
> A.  That the mistake of [Mrs. Ball] was as to a material fact of the Edward Jones account;
>
> AND
>
> B.  That the mistake of [Mrs. Ball] was of such grave consequence that to enforce the Edward Jones account agreement against her, as written, would be unconscionable;
>
> AND
>
> C.  That the mistake of [Mrs. Ball] occurred notwithstanding her due diligence;
>
> AND
>
> D.  That Carrie Ball, Michelle Phillips, W.G. (Dubby) Ball, Jr., Lallie Davis and Ann Rodgers would not suffer serious prejudice if the Edward Jones account agreement was set aside, except for the loss of their bargain.

The court entered a trial order and judgment on June 17, 2019, setting

forth the trial proceedings, its rulings, the jury's verdict, and its judgment.  The

court dismissed the claim for mutual mistake and entered a judgment for Mrs. Ball

on her unilateral mistake claim.  It also ordered that Mrs. Ball would recover her

taxable costs from the Ball Children, jointly and severally. Based upon the jury's verdict finding unilateral mistake on Mrs. Ball's part sufficient to support rescission of the Account No. 3 agreement, the court exercised its equity power and set aside the account agreement at issue. The court granted Mrs. Ball's request for a declaration of rights under Count IV of her complaint and rescinded Account No. 3. Finally, the court scheduled a hearing to determine the allocation and division of the account.

The Ball Children filed a motion to alter, amend, or vacate pursuant to CR 59.05 on June 26, 2019. Based on the finding that they had not done anything wrong, the Ball Children contested the order that they must pay Mrs. Ball's taxable costs. In addition, they disputed the court's denial of their motion for a bench trial. By separate motion filed the next day, the Ball Children filed a motion for a judgment notwithstanding the verdict (JNOV) pursuant to CR 50.02, arguing that Mrs. Ball failed to establish the required elements of unilateral mistake as she failed to exercise ordinary diligence when she executed the agreement, including her failure to read it, and because they would be seriously prejudiced by its rescission. Therefore, they asserted, the jury's verdict was palpably and flagrantly against the evidence. As part of their argument regarding prejudice, the Ball Children also argued that if the court rescinded the agreement, the parties would need to be returned to the status quo in 2005 and be entitled to any growth of the

investment during the ensuing years. In addition, the Ball Children argued that even if Mrs. Ball had proved all of the elements of unilateral mistake, she had not proven fraud or misrepresentation, one of which was necessary for such a claim.

The court heard arguments from the parties on the pending motions on July 23, 2019. The Ball Children pointed to the third element regarding due diligence to argue that Mrs. Ball could not rely on her failure to read the account documents. Furthermore, $342,00.00 came from the Account No. 2, owned by Mrs. Ball, Lallie, and Carrie, and there was no cause of action in the complaint as to this account. As to costs, Mrs. Ball cited cases stating that if the plaintiff succeeds without an award of damages, no costs can be awarded. The court disagreed that these cases were germane to the issue here. The court orally denied the motion for a JNOV as the jury had the evidence before it to make the findings it did. It granted the motion to alter, amend, or vacate related to costs. There was no discussion of Mrs. Ball's motion for a bench trial. The court went on to discuss the value of a supersedeas bond; the court believed it should be half of the current value of the account, or approximately $350,000.00. Counsel for Mrs. Ball did not object to that amount, although counsel for the Ball Children believed it should be for the whole amount of the account. By separate order entered that day, the court denied the Ball Children's motions to dismiss Mrs. Ball's complaint and to amend

their answer to assert a counterclaim and cross-claim. These motions had been argued on May 21, 2019.

The court entered an order on July 26, 2019, memorializing its rulings on the Ball Children's motions. The court declared that Mrs. Ball was the sole owner of the funds in Account No. 3 and that the Ball Children had no claim to these funds. It then ordered that Edward Jones, at either Mrs. Ball's or her counsel's direction, transfer $350,000.00 in that account to an account solely owned by Mrs. Ball or transfer the funds to another brokerage firm of her choosing, or liquidate a sufficient amount of the account holdings to pay Mrs. Ball that amount. If the Ball Children appealed the judgment, the court ordered them to file a surety bond in the amount of $350,000.00. The order was noted to be final and appealable.

On August 5, 2019, the Ball Children moved the court to alter, amend, or vacate its July 26, 2019, order related to the need to post a supersedeas bond as the funds in question were being held by Edward Jones. Mrs. Ball objected to the motion and sought the immediate distribution of $350,000.00 in Account No. 3. The Ball Children also filed a petition for a writ of prohibition in this Court seeking to prohibit the court from enforcing its July 26, 2019, order. This Court held the petition for a writ in abeyance pending a ruling on the August 5, 2019, motion.

The court heard arguments from the parties on August 13, 2019, and on August 16, 2019, it entered an order ruling on the Ball Children's motion to alter, amend, or vacate. It ordered the immediate distribution of $233,333.33 to Mrs. Ball (representing "the worst case scenario" of what she was entitled to receive) via transfer or liquidation unless the Ball Children appealed the order and judgment. It granted the motion regarding the filing of supersedeas bond and lowered the amount of the surety bond to $240,000.00, which equaled the amount to be released and interest. The order was noted to be a final order. This appeal by the Ball Children follows, and we note that they filed a supersedeas bond pursuant to the court's direction. In addition, Mrs. Ball filed a cross-appeal.

Before we reach the merits, we note that Mrs. Ball moved to dismiss the Ball Children's appeal as untimely, arguing that because the second motion to alter, amend, or vacate only addressed the post-judgment supersedeas bond issue, nothing triggered the tolling of their time to file a notice of appeal. Because the notice of appeal was filed 32 days after the entry of the final judgment, she argued that the appeal was untimely. A three-judge panel of this Court denied the motion, and we decline to reconsider this ruling, as Mrs. Ball requested in her brief, based upon the analysis set forth in that order.

On appeal, the Ball Children raise six arguments: 1) whether Mrs. Ball's complaint was barred by the statute of limitations; 2) whether the trial court

erred in denying their motion to amend their answer and file a cross-claim; 3) whether it erred in denying their motion for a bench trial; 4) whether it erred in denying their motions for a directed verdict and for a JNOV on the unilateral mistake claim; 5) whether it erred in its ruling that the entire Edward Jones account belonged to Mrs. Ball rather than returning the parties to the status quo ante; and 6) whether it erred in requiring them to file a supersedeas bond. In her cross-appeal, Mrs. Ball seeks reversal of the trial court's order denying her taxable costs. We shall address each issue in turn.

For their first argument, the Ball Children contend that the court erred in denying their motion for summary judgment related to whether the complaint was barred by the applicable statute of limitations.[3] Our standard of review is set forth in *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996):

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue. *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service*

---

[3] We disagree with Mrs. Ball's contention that the Ball Children failed to properly preserve this issue by seeking a jury instruction as to when Mrs. Ball actually became aware of her mistake or should have inquired further.

-28-

*Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest*, 807 S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985). Consequently, summary judgment must be granted "only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor. . ." *Huddleston v. Hughes*, Ky.App., 843 S.W.2d 901, 903 (1992), *citing Steelvest, supra* (citations omitted).

"Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (footnote omitted).

KRS 413.120(11) provides that "[a]n action for relief or damages on the ground of fraud or mistake" must be brought within five years. However, KRS 413.130(3), a statute of repose, tolls the limitations period until the fraud or mistake is discovered:

In an action for relief or damages for fraud or mistake, referred to in subsection (11) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake. However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud.

Mrs. Ball did not file her complaint until 2018, nearly twelve years after the signing of the Edward Jones account agreement in July of 2006.

The Ball Children argue that this Court should strictly apply KRS 413.130(3) due to a lack of proof of fraud or misrepresentation by them, and it therefore should hold that Mrs. Ball had to file her complaint within ten years of the signing of the agreement. Based on the circumstances of this case, we disagree.

Both Mrs. Ball and the circuit court relied upon the 1924 opinion of the former Court of Appeals in *Loy v. Nelson*, 201 Ky. 710, 258 S.W. 303 (1924), which addressed estoppel with respect to the confidential relationship between a son and his mother:

> It is true that the recording of a deed constitutes constructive notice to the public; but, in view of the close, confidential relations existing between the mother and son, of the fact that after the deed was made that he informed her that it was made to her, and that he was taking care of it at his house, and in addition thereto his placing her in possession of the land itself and acknowledging her title thereto, it appears that the old lady was lulled into a false sense of security. She was not required to examine the record or make further inquiries, but had a right to rely on the information that he gave her as to what the record showed, and under these circumstances he would be estopped to plead the running of the statute until such time as she received notice or was put upon inquiry of the facts. 10 R. C. L. Estoppel, § 139; *C. & O. R. R. Co. v. Speakman*, 114 Ky. 628, 71 S. W. 633, 24 Ky. Law Rep. 1449, 63 L. R. A. 193; *Newton v. Carson*, 80 Ky. 309; 25 Cyc. 1016.
>
> . . . .

> It is true that an estoppel to be available should be pleaded as well as proven. and that the reply contains no such plea, but all the facts are fully stated and relied on in the petition, and issue joined and proof taken thereon.

*Id.* at 304. *See also Lemaster v. Caudill*, 328 S.W.2d 276 (Ky. 1959); *Hernandez v. Daniel*, 471 S.W.2d 25 (Ky. 1971).

We agree with Mrs. Ball that the estoppel principles at issue are based on the relationship between the parties, not upon whether any fraud or misrepresentation had taken place. Here, Mrs. Ball did not have any reason to question how Account No. 3 was set up or that it was set up in a way that was not her intention. And, because her children were the ones who were involved in the set up of the account, the confidential relationship that existed between them tolled the limitations period until Mrs. Ball discovered the mistake. Therefore, we hold that as a matter of law, the circuit court did not err in ruling that estoppel tolled the applicable limitations period in this case based upon the confidential relationship among the parties.

For their second argument, the Ball Children contend that the circuit court erred when it denied their motions for a directed verdict and for a JNOV on the unilateral mistake claim. In *Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky. App. 1985), this Court set forth the applicable standard a trial court must use in ruling on such motions:

In ruling on either a motion for a directed verdict or a motion for judgment notwithstanding the verdict, a trial court is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion. Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence. And, it is precluded from entering either a directed verdict or judgment n.o.v. unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ. *See Sutton v. Combs*, Ky., 419 S.W.2d 775 (1967).

Our standard of review, in turn, is set forth in *Bierman v. Klapheke*, 967 S.W.2d 16, 18-19 (Ky. 1998):

On a motion for directed verdict, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party. *Meyers v. Chapman Printing Co., Inc* ., Ky., 840 S.W.2d 814 (1992). Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous. *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984).

In reviewing the sufficiency of evidence, the appellate court must respect the opinion of the trial judge who heard the evidence. A reviewing court is rarely in as good a position as the trial judge who presided over the initial trial to decide whether a jury can properly consider the evidence presented. Generally, a trial judge cannot enter a directed verdict unless there is a complete absence

of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses. *Cf. Taylor v. Kennedy*, Ky.App., 700 S.W.2d 415 (1985). The reviewing court, upon completion of a consideration of the evidence, must determine whether the jury verdict was flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice. If it was not, the jury verdict should be upheld. *Cf. Lewis v. Bledsoe Surface Mining Co.*, [798 S.W.2d 459 (Ky. 1990)]; [*NCAA v. Hornung*, 754 S.W.2d 855 (Ky. 1988).]

With this standard in mind, we shall consider the Ball Children's argument that there was insufficient evidence to support the verdict on this claim.

In *Jones v. White Sulphur Springs Farm, Inc.*, 605 S.W.2d 38 (Ky. App. 1980), this Court set forth the four elements a plaintiff must prove to rescind a contract due to a unilateral mistake. These are: 1) "the consequences of the mistake must be so grave that the enforcement of the contract would be unconscionable"; 2) "the mistake must relate to a material feature of the contract"; 3) "the mistaken party must have exercised ordinary diligence"; and 4) "the rescission must be possible without serious prejudice to either party." *Id*. at 42-43. The Ball Children assert that Mrs. Ball failed to establish all but the second element.

The Ball Children first assert that the Account No. 3 agreement was not an unconscionable contract. "[T]he doctrine of unconscionability is . . .

-33-

directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain[.]" *Louisville Bear Safety Service, Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. App. 1978) (citing *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 549 P.2d 903 (1976)). They argue that the account agreement cannot be unfairly surprising or oppressive because Mrs. Ball created the account, the account provided for her support, and it fulfilled her estate planning goal that the funds in the account would belong to her children equally upon her death.

Mrs. Ball, on the other hand, points out that the jury had been instructed to consider whether her mistake "was of such grave consequence that to enforce the Edward Jones account agreement against her, as written, would be unconscionable[.]" We agree with her that it was not unreasonable or flagrantly against the evidence that the jury found that the agreement was unconscionable based upon the circumstances of this case, including that Mrs. Ball in effect divested herself of 5/6th of her money in creating this account and that her children denied her access to the funds and sought to distribute the funds to themselves via a liquidation of the account. Mrs. Ball's testimony was firm and consistent in her claim that she did not intend for her children to be co-owners of the account;

rather, she wanted them to share the funds in the account equally when she passed

away.

Next, the Ball Children contend that Mrs. Ball did not exercise

ordinary diligence due to her failure to read the contract or documents provided to

her over the years.

> Under the rule recited in *Fields v. Cornett*, [254 Ky. 35,
> 70 S.W.2d 954 (1934)], on which appellant relies, the
> third essential condition to afford relief from a contract
> by reason of an unilateral mistake is:  'Generally the
> mistake must have occurred notwithstanding the exercise
> of ordinary diligence by the party making the mistake.'
> Since appellant was the party making the mistake, if any
> was made, he must have exercised ordinary diligence as a
> prerequisite to his right to have the settlement set aside;
> and, since most of the records were in his possession and
> the rest were available to him and he was dealing with
> appellees at arm's length and questioning the accuracy of
> certain items, it cannot be said that he exercised ordinary
> care when he failed to examine the remainder of the
> records to determine the accuracy of the accounting in
> respect to them.

*Kane v. Hopkins*, 309 Ky. 488, 494, 218 S.W.2d 37, 40 (1949).

In her brief, Mrs. Ball likens "ordinary diligence" to "ordinary care,"

and she cites to *Jones v. Sharp's Adm'r*, 282 Ky. 638, 139 S.W.2d 731, 734-35

(1940), for a definition of this term:

> [T]his court has long adopted a plain and satisfactory
> definition of "ordinary care", which is that it means
> "such care as an ordinarily prudent person will usually
> exercise under circumstances like or similar to those
> presented in this case." *Owensboro City R. Co. v.*

> *Tucker*, 148 Ky. 844, 147 S.W. 916.  Also, the term "ordinary care" is defined as being such care as one of ordinary prudence usually exercises under given circumstances.
>
> What constitutes the exercise of reasonable or "ordinary care" depends on the facts and circumstances of each particular case, as they are developed by the evidence.  *Sharp v. Layne*, Ky., 117 S.W. 292.

Mrs. Ball correctly points out that the only question before the jury was her exercise of ordinary diligence in discovering the mistake in the documents at the time Account No. 3 was opened, not whether she exercised ordinary diligence with respect to the account documents she received periodically over the ensuing years. The Ball Children did not request a jury instruction as to whether Mrs. Ball should have discovered the mistake ten years prior to the filing of her complaint related to the application of KRS 413.130(3).  Therefore, any events that happened after the Edward Jones account documents had been executed would not be relevant to this issue.

Based upon the facts and circumstances of this case, we agree with Mrs. Ball that there was sufficient evidence for the jury to find that she had exercised ordinary diligence.  Specifically, the confidential relationship between Mrs. Ball and the Ball Children supplies the necessary support for the jury's finding in this regard.  Certainly, Mrs. Ball would have believed her children

would have conveyed her instructions related to ownership of the account to the Edward Jones representative when it was being set up.

The last element for unilateral mistake addresses whether rescission would seriously prejudice either party. The Ball Children contend that because they believed they were joint owners for 15 years and at least one of the children stated she would have handled her finances differently, they would be seriously prejudiced. But as Mrs. Ball points out, the former Court of Appeals defined this element in *Fields v. Cornett*, 254 Ky. 35, 70 S.W.2d 954, 957 (1934), as follows: "It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of his bargain. In other words, it must be possible to put him in [status] quo." (Internal quotation marks omitted.) The Ball Children did not contribute anything to the Edward Jones account, as Mrs. Ball provided the funding for it, and therefore had nothing to lose from it. Therefore, the Ball Children cannot establish that they would be seriously prejudiced – or prejudiced at all – if the account were to be rescinded.

Accordingly, we hold that the circuit court did not err in denying the Ball Children's motions for a directed verdict or for a JNOV on Mrs. Ball's claim of unilateral mistake.

For their third argument, the Ball Children argue that the circuit court erred by reforming the Account No. 3 agreement rather than rescinding it and

returning the parties to the status *quo ante*. They believe the court erred when it declared Mrs. Ball to be the sole owner of Account No. 3 and awarded the balance to her. Because Account No. 3 was funded by Account No. 2, which was owned by Mrs. Ball and two of her daughters, the Ball Children argue that the court ignored Lallie's interest in the account. For the reasons set forth in Mrs. Ball's brief, we disagree with the Ball Children's argument on this issue. First, the court rescinded the agreement; it did not reform it. Second, the court in its equitable role properly awarded the funds to Mrs. Ball rather than dividing it based upon the ownership of the second account. Account No. 2 had been disavowed by the Ball family members because it had been set up incorrectly, which is why Account No. 3 was created. It would make no rational sense to return the parties to Account No. 2. Therefore, we find no merit in this argument.

For their fourth argument, the Ball Children argue that the court erred in denying their motion for a bench trial. As Mrs. Ball states, this motion was premised on the court's potential granting of the Ball Children's motion for summary judgment, which was denied. The court never ruled on this motion, and the Ball Children never brought the motion before the court again for a ruling. Therefore, we reject this argument.

For their fifth argument, the Ball Children argue that the circuit court abused its discretion in denying the motion for leave to file an amended answer

and assert a cross-claim against Edward Jones to seek indemnity against it. They filed their motion following what they described as an adversarial and accusatory deposition of Edward Jones representative Larry Bowen, which resulted, they claim, in permitting Mrs. Ball to imply that the account documents were not created pursuant to her direction. CR 15.01 addresses the amendment of pleadings and provides in relevant part as follows:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

We shall review the circuit court's ruling for abuse of discretion. *See Laneve v. Standard Oil Co.*, 479 S.W.2d 6, 8 (Ky. 1972).

Mrs. Ball argues, on the other hand, that claims for indemnity and contribution do not accrue until a payment has been made, citing *Commonwealth Department of Transportation, Bureau of Highways v. All Points Construction Company*, 566 S.W.2d 171, 173 (Ky. App. 1977) ("a tortfeasor's claim for contribution remains inchoate until payment is made to the injured party."). Because she sought rescission of the contract rather than money damages, Mrs. Ball questioned whether the Ball Children would even have a claim for

contribution or indemnity from Edward Jones. We agree that any claims the Ball Children have against Edward Jones – if any – had not accrued when they filed the motion. Therefore, we find no abuse of discretion in the circuit court's denial of the motion.

For their sixth and final argument, the Ball Children seek review of the circuit court's order requiring them to post a supersedeas bond pursuant to CR 73.04 in excess of an amount to cover the cost of an appeal and interest. Because the court had granted Mrs. Ball equitable relief by rescinding the contract rather than ordering them to pay money to her and because Edward Jones had been directed to disperse the funds it secured, the Ball Children contend that the amount of the supersedeas bond in this instance was contrary to the purpose of CR 73.04.

Mrs. Ball argues that this issue is moot because the Ball Children posted the supersedeas bond in the amount ordered by the circuit court. They also argue that whether the bond amount was excessive is not within the jurisdiction of this Court. CR 73.06 addresses the method by which a party may challenge the sufficiency of a supersedeas bond:

> (1) The sufficiency of the bond or the surety may be determined by the trial court upon motion and hearing.
>
> (2) During an appeal, the trial court shall retain original jurisdiction to determine all matters relating to the right to file a supersedeas bond, the amount and sufficiency thereof and the surety thereon.

And in *Strunk v. Lawson*, 447 S.W.3d 641, 652 (Ky. App. 2013), this Court

addressed the application of this Rule and held:

> As an appellate court, we lack authority to approve them, and are limited to granting leave to file a bond in the circumstances described in CR 73.06 or "to review the sufficiency of supersedeas bonds already filed in a pending appeal." *Henry Vogt Machine Company v. Scruggs*, 769 S.W.2d 766, 767 (Ky. App. 1989). From the record provided to us, we cannot determine whether Neal and Strunk have posted bond. If they have, the bond set is clearly "sufficient," because it exceeds mightily the $2,151.27 assessed against Neal and Strunk as costs. Whether the bond amount was excessive appears to be beyond the scope of our authority to say.

We agree with Mrs. Ball that it is beyond the scope of our review to consider

whether the amount of the supersedeas bond was excessive.

Turning now to the cross-appeal, Mrs. Ball seeks review of the circuit

court's decision not to award her taxable costs as the prevailing party pursuant to

KRS 453.040[4] and CR 54.04.[5] "While it is a general rule that the successful party

in an equitable action recovers costs, KRS 453.040(1)(b), a court of equity has a

---

[4] KRS 453.040(1)(a) provides: "The successful party in any action shall recover his costs, unless otherwise provided by law. If the plaintiff succeeds against part of the defendants, and not against others, he shall recover his costs from the former, and the latter shall recover their costs from the plaintiff."

[5] CR 54.04(1) provides: "Costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the Commonwealth, its officers and agencies shall be imposed only to the extent permitted by law. In the event of a partial judgment or a judgment in which neither party prevails entirely against the other, costs shall be borne as directed by the trial court."

judicial discretion in settlements as to costs and its discretion will not be controlled by this court unless the chancellor has abused his discretion." *Johnson v. Johnson*, 273 S.W.2d 558, 560 (Ky. 1954). While the circuit court initially awarded Mrs. Ball taxable costs, it vacated this award based on the Ball Children's motion in which they argued that the jury had not found any wrongdoing on their part, that they had successfully defended Mrs. Ball's claim of mutual mistake, and that no monetary damages had been awarded. Mrs. Ball claims that none of these reasons provides a basis to deny her these costs in light of the results she achieved with the lawsuit.

Despite these arguments, we must agree with the Ball Children that Mrs. Ball has not established that the circuit court abused its discretion in deciding not to award taxable costs to her. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). While perhaps one of the reasons claimed by the Ball Children would not have convinced the circuit court to change its decision, the combination of factors certainly could have and ultimately did in this case. We find no reason to disturb the circuit court's decision.

For the foregoing reasons, the judgment and orders of the Taylor Circuit Court are affirmed.

COMBS, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, DISSENTING:  I respectfully dissent as to the costs issue appealed by Mrs. Ball.  I would reverse and state that the trial court abused its discretion.  Mrs. Ball was the successful litigant and costs should have been awarded to her.

BRIEFS FOR APPELLANTS/CROSS-APPELLEES ANN RODGERS, LALLIE DAVIS, AND MICHELLE PHILLIPS:

Angela M. Call
Allyson S. Cave
Campbellsville, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT, ANN D. BALL:

Joseph H. Mattingly III
John A. Elder IV
Lebanon, Kentucky